In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-04-00108-CV
______________________________


IN THE INTEREST OF
D.M.C., A CHILD
Â 


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

On Appeal from the County Court at Law
Bowie County, Texas
Trial Court No. 03C0797-CCL


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 



Before Ross, Carter and Cornelius,* JJ.
Opinion by Justice Cornelius

________________________________________
*William J. Cornelius, Chief Justice, Retired, Sitting by Assignment

O P I N I O N

Â Â Â Â Â Â Â Â Â Â Â Â The County Court at Law of Bowie County rendered judgment terminating Angela Denise
Coleman's parental rights to her son, D.M.C., who was born on May 7, 2003. At the hearing on the
petition to terminate, Coleman appeared in person and through counsel. The Texas Department of
Family and Protective Services was represented by counsel, the child was represented by an Attorney
Ad Litem and a Guardian Ad Litem, and the unknown father of D.M.C. was represented by an
Attorney Ad Litem.
Â Â Â Â Â Â Â Â Â Â Â Â After hearing evidence and argument of counsel, the trial court found and concluded that:
Â Â Â Â Â Â Â Â Â Â Â Â 1.Â Â Â Â Â Â Â Â Â Coleman knowingly placed or allowed D.M.C. to remain in conditions or
surroundings which endangered D.M.C.'s physical or emotional well-being. Tex. Fam. Code Ann.
Â§ 161.001(1)(D) (Vernon 2002).
Â Â Â Â Â Â Â Â Â Â Â Â 2.Â Â Â Â Â Â Â Â Â Coleman knowingly engaged in conduct which endangered D.M.C.'s physical or
emotional well-being. Tex. Fam. Code Ann. Â§ 161.001(1)(E) (Vernon 2002).
Â Â Â Â Â Â Â Â Â Â Â Â 3.Â Â Â Â Â Â Â Â Â Coleman had her parent-child relationship terminated with respect to another child
based on a finding that her conduct violated Section 161.001(1)(D) or (E) of the Texas Family Code. 
Tex. Fam. Code Ann. Â§ 161.001(1)(M) (Vernon 2002).
Â Â Â Â Â Â Â Â Â Â Â Â 4.Â Â Â Â Â Â Â Â Â The termination of Coleman's parental rights to D.M.C. is in the best interest of
D.M.C. Tex. Fam. Code Ann. Â§ 161.001(2) (Vernon 2002).
Â Â Â Â Â Â Â Â Â Â Â Â The trial court's findings and conclusions are based on testimony given in open court by
Linda Holley, a worker for the Department of Family and Protective Services; Terri Moore, a
volunteer with C.A.S.A., and Guardian Ad Litem for D.M.C.; and Coleman, D.M.C.'s mother.
Â Â Â Â Â Â Â Â Â Â Â Â Coleman appeals the trial court's judgment, raising two issues: (1) there is insufficient
evidence to support the termination of Coleman's parental rights as being in D.M.C.'s best interests,
and (2) the trial court improperly placed the burden of proof in this proceeding on Coleman rather
than on the State. We decide both of these issues against Coleman for the reasons stated hereafter.
Â Â Â Â Â Â Â Â Â Â Â Â A court may terminate a parent's parental rights if the State proves by clear and convincing
evidence that the parent has engaged in one or more of the acts described in the Texas Family Code,
Section 161.001, and further proves that termination is in the best interests of the child.
Â Â Â Â Â Â Â Â Â Â Â Â The standard of review for factual sufficiency challenges in termination cases is clear and
convincing evidence. Tex. Fam. Code Ann. Â§ 161.001 (Vernon 2002); In re J.F.C., 96 S.W.3d 256,
263 (Tex. 2003). The evidence is clear and convincing when the proof is such that it produces in
the mind of the trier of fact a firm belief or conviction of the truth of the allegations sought to be
established. In re C.H., 89 S.W.3d 17, 25â26 (Tex. 2002). The Texas Supreme Court case of In re
J.F.C., 96 S.W.3d 256, sets out the tests for factual sufficiency of the evidence in termination cases,
and they are the tests we apply in this case.
Â Â Â Â Â Â Â Â Â Â Â Â Although Coleman raises an issue as to factual sufficiency, she does not contest the
sufficiency of the evidence to support the trial court's findings that her actions came within
subsections (1)(D), (1)(E), and (1)(M) of Section 161.001 of the Texas Family Code. On the issue
of evidentiary sufficiency, she contends only that there is insufficient evidence to support the trial
court's finding that termination is in the best interests of D.M.C. She bases her contention on the
allegation that the Guardian Ad Litem did not adequately investigate and seek to contact known
relatives where D.M.C.'s siblings had been "successfully" placed in the past. In her brief, Coleman
elaborates on this argument to contend, in effect, that the Guardian Ad Litem did not reasonably
investigate alternative sources of placement for D.M.C., including reunification with his mother.
Â Â Â Â Â Â Â Â Â Â Â Â A guardian ad litem appointed pursuant to Tex. Fam. Code Ann. Â§ 107.001 (Vernon Supp.
2004â2005) is not required to conduct an investigation to determine the best interests of the child. 
Tex. Fam. Code Ann. Â§ 107.002(a) (Vernon Supp. 2004â2005) provides that the guardian ad litem
may conduct an investigation to the extent the guardian considers necessary to determine the best
interests of the child. The primary focus of the guardian's responsibility is the propriety of
termination based on the conduct of the parent, not the merits of alternative placement of the child. 
Nevertheless, the record here contains substantial evidence that the Guardian Ad Litem and the
Department of Family and Protective Services workers did investigate all reasonable and practical
avenues of alternative placements with relatives as well as reunification with the mother.
Â Â Â Â Â Â Â Â Â Â Â Â Coleman, by her own admission, is a regular, heavy user of cocaine and has been repeatedly
incarcerated and convicted of multiple drug offenses, as well as theft and burglary offenses. She has
had four children, including D.M.C., and has been incarcerated most of the time since D.M.C.'s birth. 
D.M.C. and at least one other of Coleman's children tested positive for cocaine at their births. 
Coleman admitted that she used cocaine during her pregnancy and immediately before D.M.C.'s
birth. As far as the Department of Family and Protective Services can determine, Coleman has no
permanent home, and the Department has not been able to locate her at the various addresses she has
given them. The only times Coleman contacted the Department was when she was incarcerated. 
Coleman informed the Department that she wanted to relinquish her parental rights to D.M.C. and
only wanted the right to visit him, but she never signed the necessary papers to accomplish a
relinquishment. Coleman does not know who is D.M.C.'s father.
Â Â Â Â Â Â Â Â Â Â Â Â The Department and the Guardian Ad Litem tried to locate D.M.C.'s father. Coleman
identified a person known as Daryl Pickett as possibly being D.M.C.'s father. He was contacted and
said he was interested in D.M.C., but a paternity test proved he was not D.M.C.'s father. Coleman
was not able to identify any other person who could be the father. A woman who worked in the
hospital where D.M.C. was born was interested in possibly taking D.M.C., but the Department did
a study and found she was not a relative and did not qualify to be a foster parent.
Â Â Â Â Â Â Â Â Â Â Â Â Coleman had three other children before she gave birth to D.M.C. The first child was placed
with some relatives when Coleman was incarcerated, and, as far as the Department knows, is still
with them. The second child tested positive for cocaine when she was born. The Department
worked with Coleman, and she agreed to place the child with relatives, but she later took the child
from the relatives and placed her with other relatives, then took her back again. At three months of
age, that child weighed nine ounces less than her birth weight and was in the hospital for failure to
thrive. The Department tried to locate other relatives it could work with, but was never able to get
from Coleman identifications or locations of relatives so it could consider other placements. The
Guardian Ad Litem testified that a maternal aunt of Coleman's had taken one of Coleman's children,
but Coleman interfered with that and the child was put in danger. The Department had previously
worked with Coleman extensively to try to reunify her with her other children. Coleman's lack of
cooperation with possible reunification with D.M.C. is the same as it was with her other children. 
We find clear and convincing evidence that termination is in D.M.C.'s best interest, and we overrule
Coleman's first issue.
Â Â Â Â Â Â Â Â Â Â Â Â Coleman also contends the trial court erred in placing the burden of proof on her rather than
on the State. Coleman brings this contention because of a statement the trial court made in
announcing its decision. Among other remarks, the trial court said, "However, there was some
testimony that you did have some contacts; though they appear to be very minimal contacts, you did
have some. But just not enough to meet . . . meet that burden that you need to meet to achieve
reunification with the child."
Â Â Â Â Â Â Â Â Â Â Â Â We find no indication in the record that the trial court placed any evidentiary burden on
Coleman. The statement quoted here was made after the presentation of all the evidence and
argument of counsel, and merely reflected the trial court's conclusion that Coleman's actions, as
proven by the State, failed to demonstrate that she had met her burden as a parent, to provide the
required protection and nurture for the child.
Â Â Â Â Â Â Â Â Â Â Â Â For all the reasons stated, we affirm the trial court's judgment.


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â William J. Cornelius
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice*

*Chief Justice, Retired, Sitting by Assignment


Â 
Date Submitted:Â Â Â Â Â Â Â Â Â Â May 3, 2005
Date Decided:Â Â Â Â Â Â Â Â Â Â Â Â Â July 13, 2005




="true" Name="Intense Emphasis"/>
 
 
 
 
 
 












 
 
 
 
 
 
 




Â 

Â 

Â 

Â 

Â 

Â 

Â 

Â 

Â 

 In
The

   Court
of Appeals

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Sixth
Appellate District of Texas at Texarkana

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  ______________________________

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  No. 06-10-00055-CR

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  ______________________________

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  JOHN BOZEMAN,
Appellant

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  V.

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  THE STATE OF TEXAS, Appellee

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 


Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  On Appeal from the 349th
Judicial District Court

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Houston County, Texas

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Trial Court
No. 08CR-042

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

Â 

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Before Morriss, C.J.,
Carter and Moseley, JJ.

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Opinion by Justice Carter








Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  O P I N I O N

Â 

Â Â Â Â Â Â Â Â Â Â Â  John
Bozeman was indicted for the theft[1]
of nine pieces of jewelry from Cathy Hobson.Â 
After a bench trial, Bozeman was found guilty and was sentenced to
eighteen monthsÂ imprisonment in the Texas Department of Criminal JusticeÂState
Jail Division.[2]Â  On appeal, Bozeman claims that (1) the judgment
is not supported by constitutionally sufficient evidence; and (2) the judgment
is not supported by appropriate evidence of the value of the items alleged to
have been stolen.Â  We affirm the judgment
of the trial court. 

I.Â Â Â Â Â Â Â Â Â  BACKGROUND

Â 

Â Â Â Â Â Â Â Â Â Â Â  Bozeman and Hobson
went to school together and have known each other most of their lives.Â  In July 2006, when Hobson was preparing to
move from a small house to a larger house next door, Bozeman offered the use of
his truck and trailer to assist in the move.Â 
The moving process commenced on Monday, July 17.[3]Â  Hobson testified that on that date, Bozeman
moved both of her jewelry boxes from the smaller house to the upstairs bedroom
of the larger house.Â  Bozeman was aware
of the location of the jewelry boxes because Hobson directed him to place them
in a drawer next to her bed.Â  At that
time, there was nothing missing from either of the jewelry boxes.[4]Â  

Â Â Â Â Â Â Â Â Â Â Â  On
the second day of the move, Tuesday, July 18, Bozeman asked Hobson to take her
son to a babysitter, as Bozeman could not get any work done with the child
underfoot.Â  Hobson agreed and took her
son to a friendÂs house a few blocks away.Â 
Hobson returned approximately forty-five minutes later, only to find
that Bozeman was gone.Â  Baffled by his
disappearance, Hobson called Bozeman on his cell phone only to be told that he
was at LoweÂs in Palestine purchasing a lawn mower for his father.[5]Â  

Â Â Â Â Â Â Â Â Â Â Â  When
HobsonÂs husband arrived home from work on the evening of July 18, Hobson
showed him what had been accomplished at their prospective new home.Â  When Hobson noticed that an antique music box
and an antique adding machine[6]
were both missing, she immediately went upstairs to check her jewelry
boxes.Â  Hobson discovered that some of
her jewelry was missing and filed a report with the local police that same
evening.Â  Hobson never questioned Bozeman
about the missing items of jewelry, as she suspected he was responsible for
their disappearance.Â  

Â Â Â Â Â Â Â Â Â Â Â  Approximately
three weeks later, when Hobson learned Bozeman was having work done on one of his
rings at Charles DickensÂ jewelry store in Palestine, she paid a visit to
Dickens.Â  After having been presented
with a copy of the police report, Dickens agreed to show Hobson several items
of jewelry Bozeman brought to the store.Â 
Hobson identified nine of those items of jewelry as belonging to
her.Â  At trial, Dickens testified that
Bozeman brought those nine items of jewelry into his store on July 19, 2006,
the day after HobsonÂs jewelry was reported missing.Â  Bozeman denies any involvement in the disappearance
of HobsonÂs jewelry; the jewelry boxes were dusted for fingerprints, but no
discernible prints were obtained.Â  

II.Â Â Â Â Â Â Â  The Evidence Is Legally
Sufficient to Support the Finding of Unlawful Appropriation

Â 

Â Â Â Â Â Â Â Â Â Â Â  In
his first point of error, Bozeman generally claims the evidence is legally
insufficient to support the trial courtÂs verdict.Â  In reviewing the legal sufficiency of the
evidence, we review all the evidence in the light most favorable to the juryÂs
verdict to determine whether any rational jury could have found the essential
elements of the charged offense.Â  Brooks v. State, 323 S.W.3d 893, 902
n.19 (Tex. Crim. App. 2010) (4-1-4 decision) (citing Jackson v. Virginia, 443 U.S. 307, 319 (1979)); Hartsfield v. State, 305 S.W.3d 859, 863
(Tex. App.ÂÂTexarkana 2010, pet. refÂd) (citing Clayton v. State, 235 S.W.3d 772, 778 (Tex. Crim. App.
2007)).Â  Our rigorous legal sufficiency
review focuses on the quality of the evidence presented.Â  Brooks,
323 S.W.3d at 917Â18 (Cochran, J., concurring).Â 
We examine legal sufficiency under the direction of the Brooks opinion, while giving deference
to the responsibility of the jury Âto fairly resolve conflicts in testimony, to
weigh the evidence, and to draw reasonable inferences from basic facts to
ultimate facts.ÂÂ  Hooper v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing Jackson, 443 U.S. at 318Â19).

Â Â Â Â Â Â Â Â Â Â Â  Legal
sufficiency of the evidence is measured by the elements of the offense as
defined by a hypothetically correct jury charge.Â  Malik
v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).[7]Â  The hypothetically correct jury charge Âsets
out the law, is authorized by the indictment, does not unnecessarily increase
the StateÂs burden of proof or unnecessarily restrict the StateÂs theories of
liability, and adequately describes the particular offense for which the
defendant was tried.ÂÂ  Id.Â 
This standard ensures that a judgment of acquittal is reserved for those
situations in which there is an actual failure in the StateÂs proof of the
crime, rather than a mere error in the jury charge submitted.Â  Id.Â  This standard also applies to bench
trials.Â  Id. 

Â Â Â Â Â Â Â Â Â Â Â  A.Â Â Â Â Â Â Â  Appropriation of Property 

Â 

Â Â Â Â Â Â Â Â Â Â Â  The
first issue is determined by an analysis of the evidence to determine if it is
sufficient to justify finding that Bozeman appropriated the property.Â  Bozeman points to his own testimony, which
accounts for his acquisition of the jewelry in question from sources other than
Hobson.Â  First, Bozeman maintains that he
purchased two of the items of jewelry at a pawn shop in Crockett.Â  The record is not clear as to which two items
Bozeman claims were so purchased.Â  John
Smock, the owner of the pawn shop in Crockett, testified that he has known
Bozeman for fifteen years and that Bozeman has purchased several pieces of
jewelry from Smock over the years, similar to the rings depicted in StateÂs
exhibit seventeen (a photograph of the nine items of jewelry located in
DickensÂ jewelry store).Â  Next, Bozeman
testified that the coin he is accused of stealing from Hobson (actually a
.5-ounce coin, rather than a 5-ounce coin) was given to him by his father,
Charles Bozeman.Â  Charles testified that
he purchased a 2000 Liberty gold coin for Bozeman in March 2001.Â  Bozeman testified that the wedding band
(otherwise not identified) was given to him by his father as well when his father
outgrew it.Â  

Â Â Â Â Â Â Â Â Â Â Â  Bozeman
contends that the remaining five items of jewelry he was convicted of stealing
from Hobson were items he purchased from a man by the name of Dennis
Denby.Â  Bozeman maintains that Denby sold
the items for Otis Johnson, who needed the money to pay his electric bill.
Denby testified that in early August 2006, he introduced Bozeman to a man that
had some jewelry to sell.Â  Denby took the
man (identified by Bozeman as Johnson) to Bozeman, who purchased the
jewelry.Â  Bozeman introduced a sales
receipt at trial for these five items, dated August 7, 2006.Â  According to Bozeman, Denby signed the
receipt ÂDennis Denby sold for Otis JohnsonÂ on the date of the
transaction.Â  Denby testified that
Bozeman approached him a few days after the sale and asked him to sign the
receipt.Â  

Â Â Â Â Â Â Â Â Â Â Â  Bozeman
maintains on appeal that the weakness of the StateÂs evidence, in conjunction
with the evidence accounting for BozemanÂs legal acquisition of the jewelry,
can lead only to the conclusion that the evidence failed to establish BozemanÂs
guilt beyond a reasonable doubt.Â  He
complains that the StateÂs evidence is largely circumstantial and that it
failed to eliminate any other reasonable alternative, such as the sale of the
jewelry to Bozeman by a third party.[8]Â  The lack of direct evidence is not
dispositive of the issue of BozemanÂs guilt.Â 
Circumstantial evidence is as probative as direct evidence in
establishing the guilt of an actor, and circumstantial evidence alone can be
sufficient to establish guilt.Â  Hooper, 214 S.W.3d at 13.Â  Further, the standard of review on appeal is
the same for both direct and circumstantial evidence cases.Â  Guevara
v. State, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004).Â  

Â Â Â Â Â Â Â Â Â Â Â  As
a reviewing court, it is our job to view the evidence in the light most
favorable to the verdict to determine whether any rational fact-finder could
have found the essential elements of the offense beyond a reasonable
doubt.Â  Further, we defer to the finder
of fact to resolve conflicts in the evidence and to determine the credibility
of that evidence.Â  Here, the trial court
was free to believe HobsonÂs testimony and to discount the testimony of Bozeman
and Denby.Â  Given the fact that Dickens
testified that Bozeman brought all nine pieces of jewelry into his store on JulyÂ 19,
and the receipt for the sale of five items of jewelry shown to have been
purchased by Bozeman was signed on AugustÂ 7, it appears that this is
exactly what the trial court did.Â  In
viewing the evidence in the light most favorable to the trial courtÂs verdict,
a rational fact-finder could have found that Bozeman unlawfully appropriated
jewelry belonging to Hobson.

Â Â Â Â Â Â Â Â Â Â Â  B.Â Â Â Â Â Â Â  Effective Consent 

Â 

Â Â Â Â Â Â Â Â Â Â Â  The indictment states, in pertinent
part, that John Bozeman:

Â 

[O]n or about
July 18, 2006 and before presentment of this Indictment, in said County and
State, did then and there:Â  unlawfully
appropriate, by acquiring or otherwise exercising control over, property,
to-wit:Â  MenÂs Yellow/gold 3 stone
wedding band, small yellow solitaire ring, MenÂs nugget solitaire ring, 3.7mm
wedding band, Ladies 3 stone with sapphire accent ring, ladyÂs 2 tone
engagement ring, w/3 stones, Yellow gold coin ring w/3 stones, 5oz gold eagle
coin, Gold watch chain and faub [sic], of the value of $1,500 or more
but less than $20,000, from Cathy Hobson, the owner thereof, without
the effective consent of the owner, namely, by deception, and with
intent to deprive the owner of the property.

Â 

Â Â Â Â Â Â Â Â Â Â Â  Due
process requires that the State prove, beyond a reasonable doubt, every element
of the crime charged.Â  Jackson, 443 U.S. 313.Â  Bozeman contends that because the indictment
alleged only one means of committing theftÂby deceptionÂthe State was required
to prove that particular means.Â  Bozeman
argues that because there is no evidence of deception, the evidence is legally
insufficient to sustain his conviction.Â 
The State maintains that it proved theft by deception as alleged in the
indictment.Â  Even though neither party
argues the effect of applying the hypothetically correct jury charge analysis
to the facts, we must do so in determining the sufficiency of the
evidence.Â  Malik, 953 S.W.2d at 240.


Â Â Â Â Â Â Â Â Â Â Â  A
person commits the offense of theft if he or she unlawfully appropriates
property with intent to deprive the owner of property.Â  Tex.
Penal Code Ann. Â§ 31.03.Â  The
gravamen of the offense is the unlawful acquisitive conduct.Â  To constitute an offense, the appropriation
must be accompanied by the specific intent to deprive the owner of the
property.Â  Appropriation is unlawful based
on the circumstances surrounding the conductÂthat the actor knew it to be
without the ownerÂs effective consent.Â  Mills v. State, 722 S.W.2d 411, 415
(Tex. Crim. App. 1986).Â  

Â Â Â Â Â Â Â Â Â Â Â  Consent
means Âassent in fact whether express or apparent.ÂÂ  Tex.
Penal Code Ann. Â§Â 1.07(a)(11) (Vernon Supp. 2010).Â  In the classical theft case, the proof from
the owner is that he or she did not consent to the accusedÂs taking the
property; Hobson testified that she never consented to Bozeman taking her
property.Â  But Bozeman argues that
evidence is not sufficient, and the State must also prove that Bozeman acted
with deception.Â  If property is taken by
deception, even if taken with the ownerÂs consent, that deception renders the
ownerÂs consent ineffective.Â  Typically,
this occurs in a contractual matter where one party consents to the other
receiving the property, but alleges that consent was gained by false promises
and the like.Â  See Tex. Penal Code Ann.
Â§ 31.01(1)(A) (Vernon Supp. 2010). 

Â Â Â Â Â Â Â Â Â Â Â  We
must determine if proof of deception is an alternative method of a manner and
means of committing an element of an offense of theft; if the indictment
alleges only one manner or means in the indictment, it is Âthe lawÂ for
purposes of the hypothetically correct charge.Â 
Gollihar v. State, 46 S.W.3d
243, 255 (Tex. Crim. App. 2001) (citing Curry
v. State, 30 S.W.3d 394, 405 (Tex. Crim. App. 2000)).Â  Elements of the offense means:Â Â  (A) the forbidden conduct; (B) the required
culpability; (C) any required result; and (D) the negation of an exception to
the offense.Â  Tex. Penal Code Ann. Â§ 1.07(a)(22) (Vernon Supp. 2010).Â  

Â Â Â Â Â Â Â Â Â Â Â  With
this in mind, we examine the elements of the offense and the alternatives of
theft. 

Â Â Â Â Â Â Â Â Â Â Â  The
hypothetically correct jury charge requires the following elements and
statutory alternatives in the indictment that must be proved:Â  

Â Â Â Â Â Â Â Â Â Â Â  (1)Â Â Â Â Â Â Â  ÂA personÂÂBozemanÂ31.03(a) 

Â Â Â Â Â Â Â Â Â Â Â  (2)Â Â Â Â Â Â Â  appropriated propertyÂ31.03(b) (the act
of appropriation) 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Â Â Â Â Â Â Â Â Â Â Â  definitions of appropriate:

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  a.Â Â Â Â Â Â Â Â  not applicable 31.01(4)(A) or 

Â Â Â Â Â Â Â Â Â Â Â  b.Â Â Â Â Â Â Â Â  acquired
or otherwise exercised control over property other than real property 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  (in
this case, the described jewelry) 

Â Â Â Â Â Â Â Â Â Â Â  (3)Â Â Â Â Â Â Â  Unlawfully
(the character of appropriation) 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  a.Â Â Â Â Â Â Â Â  without
the ownerÂs effective consentÂ31.03(b)(1)

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  b.Â Â Â Â Â Â Â Â  not
applicableÂ31.03(b)(2) (stolen property)

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  c.Â Â Â Â Â Â Â Â  not
applicableÂ31.03(b)(3) (property in custody of law enforcement) 

Â Â Â Â Â Â Â Â Â Â Â  (4)Â Â Â Â Â Â Â  With intent to deprive the owner of the
property (required culpability).

Â 

Â Â Â Â Â Â Â Â Â Â Â  ÂDepriveÂ
is defined as:Â  

Â 

A.Â Â Â Â Â Â Â  to withhold property from the owner
permanently or for so extended a period of time that a major portion of the
value of the property is lost to the ownerÂ31.01(2)(A)

Â Â Â Â Â Â Â Â Â Â Â  B.Â Â Â Â Â Â Â  not applicableÂ31.01(2)(B)

Â Â Â Â Â Â Â Â Â Â Â  C.Â Â Â Â Â Â Â  not applicableÂ31.01(2)(C) 

Â 

Â Â Â Â Â Â Â Â Â Â Â  Direct
evidence or evidence from which logical inferences may be found was presented
on each required element of the offense as follows:Â  

Â Â Â Â Â Â Â Â Â Â Â  (1)Â Â Â Â Â Â Â  BozemanÂa person

(2)Â Â Â Â Â Â Â  appropriated the described jewelry by
acquiring or exercising control of it (forbidden conduct) 

(3)Â Â Â Â Â Â Â  Without HobsonÂs effective consentÂa
circumstance surrounding the conduct and making the appropriation unlawful

(4)Â Â Â Â Â Â Â  With intent to depriveÂto withhold the
jewelry so that the value was lost to the owner (required culpability). 

Â 

Â Â Â Â Â Â Â Â Â Â Â  The State is required to prove
beyond a reasonable doubt that the appropriation of the property was unlawful,
which may be accomplished by evidence in one of three ways:Â  (1)Â without the effective consent of the
owner; (2) property is stolen and the actor appropriates it knowing it was
stolen; or (3) property was in the custody of law enforcement . . . . Â Tex.
Penal Code Ann. Â§ 31.03(b)(1)Â(3).Â 
These are the alternative methods of proving the appropriation is
unlawful.Â  Since the State alleged only
that the unlawful character of the appropriation was that it was accomplished
Âwithout the ownerÂs effective consent,Â that is the alternative means the
State must prove.Â  

Â Â Â Â Â Â Â Â Â Â Â  The
evidence showed that Hobson did not consent to Bozeman taking the
property.Â  ÂConsentÂ means assent in
fact, whether real or apparent.Â  Tex. Penal Code Ann. Â§
1.07(a)(11).Â  If the evidence shows the
owner did not give any form of consent, that necessarily is evidence that the
owner did not give Âeffective consent.ÂÂ 
ÂAppropriation of propertyÂ is Âwithout the ownerÂs effective consentÂ
if either (1) it is without his or her Âassent in factÂ or (2) his or her
Âassent in factÂ is rendered ineffective by one or more of the circumstances
listed at Texas Penal CodeÂ  Section 31.01(4),
including Âdeception.ÂÂ  Thomas v. State, 753 S.W.2d 688, 692
(Tex. Crim. App. 1988).[9]
Â 

Â Â Â Â Â Â Â Â Â Â Â  Section
31.01(3) sets out several instances of events (including the actorÂs deception)
that demonstrate consent is not effective.Â 
So if a victim gave some form of consent, the defendantÂs deception may
be used to show that the consent given was not effective.Â  The statutory alternative element the State
must prove is that the appropriation was without effective consent.Â  Acting with deception is not an alternative
manner of committing theft, but is one way in which to prove that the consent
given was not effective.Â  See Milton
v. State, 652 S.W.2d 958, 959 (Tex. Crim. App. 1983) (ÂThe method or means
by which a defendant unlawfully appropriates property is not an element of the
offense of theft under Â§ 31.03, supra, and it need not be included in the
paragraph applying the law to the facts.Â); Harmon
v. State, 889 S.W.2d 521, 524 (Tex. App.ÂHouston [14th Dist.] 1994, pet.
refÂd).

Â Â Â Â Â Â Â Â Â Â Â  ÂWhen
relevant at all in a prosecution for theft, however, ÂdeceptionÂ goes to Âcircumstances
surrounding the conductÂ of the accused, in that deception operates to render
otherwise apparent consent Âineffective.ÂÂ 
Sec. 31.01(4)(A) . . . . But the deception is not of itself Âforbidden
conductÂ under Sec. 31.03, supra.ÂÂ  Mills, 722 S.W.2d at 415;[10]
see Skillern v. State, 890 S.W.2d 849, 871 (Tex. App.ÂAustin 1994, pet.
refÂd).Â  

Â Â Â Â Â Â Â Â Â Â Â  The
evidence was sufficient to prove that the appropriation of the jewelry was
without the ownerÂs effective consent. 

Â Â Â Â Â Â Â Â Â Â Â  C. Â Â Â Â Â  Variance 

Â Â Â Â Â Â Â Â Â Â Â  The
State alleged that Bozeman took the property without the effective consent of
the owner, namely, by deception.Â 
The proof at trial was that Bozeman took the property without HobsonÂs
assent in fact.Â  Because we have
concluded that allegation is not a statutory alternative element of the
offense, we next turn to the question of whether that variance between what was
alleged and what was proven requires reversal of the conviction.Â  See
Cada v. State, No. PD-0754-10, 2011
WL 409002, at *5 (Tex. Crim. App. Feb. 9, 2011) (The Texas Âimmaterial
varianceÂ law as set out in Gollihar
does not apply to the specific statutory elements of the offense alleged.Â)
(citing Smith v. State, 135 S.W.3d
259, 262 (Tex. App.ÂTexarkana 2004, no pet.). 

Â Â Â Â Â Â Â Â Â Â Â  ÂA
variance between the wording of an indictment and the evidence presented at
trial is fatal only if Âit is material and prejudices [the defendantÂs]
substantial rights.ÂÂÂ  Gollihar, 46 S.W.3d at 257 (quoting United States v. Sprick, 233 F.3d 845, 853 (5th Cir. 2000).Â  If proof of deception is not a required
element of the offense of theft and is not a statutory alternative manner or
means of committing theft under the hypothetically correct jury charge, the
variance is not necessarily reversible error.Â 
In such event, we consider whether the variance in the indictment and
the evidence is a material variance.Â  We
measure the sufficiency of the evidence by the hypothetically correct jury
charge, which need not incorporate allegations that give rise to immaterial
variances.Â  Gollihar, 46 S.W.3d at 256.

Â Â Â Â Â Â Â Â Â Â Â  ÂThe
widely-accepted rule, regardless of whether viewing variance as a sufficiency
of the evidence problem or as a notice related problem, is that a variance that
is not prejudicial to a defendantÂs Âsubstantial rightsÂ is immaterial.ÂÂ  Id.
at 246Â47.Â  In determining if the
defendantÂs substantial rights have been prejudiced, we must consider two
questions:Â  (1) whether the indictment,
as written, informed the defendant of the charge against him or her
sufficiently to allow the defendant to prepare an adequate defense at trial,
and (2)Â whether prosecution under the deficiently drafted indictment would
subject the defendant to the risk of being prosecuted later for the same crime.Â  Id.;
see In re S.C., 229 S.W.3d 837, 841
(Tex. App.ÂTexarkana 2007, pet. denied); Brown
v. State, 159 S.W.3d 703, 709 (Tex. App.ÂTexarkana 2004, pet. refÂd).

Â Â Â Â Â Â Â Â Â Â Â  The
record demonstrates that the indictment gave Bozeman adequate notice to allow
him to prepare his defense.Â  This case
was not tried on the theory that Bozeman was allowed to take the property with
HobsonÂs consent, obtained by his deceptive acts.Â  Bozeman denied taking the property.Â  He testified that the jewelry taken to the
pawn shop was not HobsonÂs, but that he acquired the jewelry from another pawn
shop, his father, and from Denby.Â  The
record affirmatively demonstrates that Bozeman did not attempt to argue that he
ever had HobsonÂs permission to take it.Â 
Bozeman does not argue that he was surprised or hampered in preparing a
defense, but merely argues the State presented no evidence of deception.Â  

Â Â Â Â Â Â Â Â Â Â Â  Further,
we find there is no risk that Bozeman could be prosecuted again for
appropriating the same property as that which was specifically described in the
indictment. Â Gollihar, 46 S.W.3d at 258.Â 
We find the variance between the pleading and the evidence presented to
be an immaterial variance and may be disregarded in applying the hypothetically
correct jury charge to the issue of evidence sufficiency.Â  Id.
at 257. 

Â Â Â Â Â Â Â Â Â Â Â  We
acknowledge that our sister court has held that when the indictment
specifically alleged that the consent was induced by deception, the State was
required to prove Âthat method of theft for conviction.ÂÂ  Geick
v. State, 321 S.W.3d 706, 710 (Tex. App.ÂHouston [14th Dist.] 2010, pet. granted, No. PD-1734-10 (Tex. Crim.
App. Mar. 30, 2011), available at http://www.ccc.courts.state.tx.us/opinions/pdfOpinionInfo2.asp2OpinionID=20825.Â  For reasons previously stated, we
respectfully disagree that ÂdeceptionÂ is a Âmethod of theftÂ that must be
proved in this situation. 

III.Â Â Â Â Â Â  Sufficient Evidence
Supports the Value of the Stolen Jewelry 

Â Â Â Â Â Â Â Â Â Â Â  In his second point of error,
Bozeman claims the value of the jewelry in question was not supported by
sufficient evidence.Â  The indictment
alleges the value of the jewelry to be Â$1,500 or more but less than $20,000.ÂÂ  To prove the stolen propertyÂs value, the
State offered HobsonÂs testimony.Â  The
State alleged in the indictment that Hobson was the owner of the stolen
property.Â  After testifying about how she
acquired the jewelry, Hobson testified as follows:

Â Â Â Â Â Â Â Â Â Â Â  Q.Â Â Â Â Â Â Â  And based on your experience, these nine
items, or even these -- letÂs say seven items, weÂll exclude the gold coin with
three stones, which doesnÂt exist, or the 5 ounce Eagle coin.Â  LetÂs -- weÂre just looking at the other
items?[11]

Â 

Â Â Â Â Â Â Â Â Â Â Â  A.Â Â Â Â Â Â Â  Yes, sir.

Â 

Â Â Â Â Â Â Â Â Â Â Â  Q.Â Â Â Â Â Â Â  Would the value of those item [sic] be
less than 1,500 or more than 1,500?

Â 

Â Â Â Â Â Â Â Â Â Â Â  A.Â Â Â Â Â Â Â  More.

Â 

Â Â Â Â Â Â Â Â Â Â Â  Q.Â Â Â Â Â Â Â  Any particular item there that you would
say it wouldnÂt even be worth a thousand on [sic] itself?

Â 

Â Â Â Â Â Â Â Â Â Â Â  A.Â Â Â Â Â Â Â  The sapphire ring with the diamonds.

Â 

Â Â Â Â Â Â Â Â Â Â Â  Q.Â Â Â Â Â Â Â  How much do you think itÂs worth?

Â 

Â Â Â Â Â Â Â Â Â Â Â  A.Â Â Â Â Â Â Â  Minimum of about a thousand.

Â 

Â Â Â Â Â Â Â Â Â Â Â  The
State also sought to establish the stolen jewelryÂs value through the testimony
of Charles Dickens, the owner of DickensÂ Jewelry store in Palestine for the
past thirty years:Â  Â 

Â Â Â Â Â Â Â Â Â Â Â  Q.Â Â Â Â Â Â Â  . . . . My understanding is that youÂve
been asked in the past to give opinions on the value of pieces of jewelry for
court cases.Â  Would that be true?

Â 

Â Â Â Â Â Â Â Â Â Â Â  A.Â Â Â Â Â Â Â  Yes.

Â 

Â Â Â Â Â Â Â Â Â Â Â  Q.Â Â Â Â Â Â Â  And let me ask you, looking at StateÂs
Exhibit 17,[12] of
those items that had been in your possession at one time, just a ballpark
figure, all total, would the value of those items be less or more than $1,500?

Â 

Â Â Â Â Â Â Â Â Â Â Â  A.Â Â Â Â Â Â Â  It would be more.

Â 

Â Â Â Â Â Â Â Â Â Â Â  Q.Â Â Â Â Â Â Â  And let me just exclude the gold coin from
the list and also the ring with the gold coin attached to it.Â  Have you looked at those two?

Â 

Â Â Â Â Â Â Â Â Â Â Â  A.Â Â Â Â Â Â Â  Yes.

Â 

Â Â Â Â Â Â Â Â Â Â Â  Q.Â Â Â Â Â Â Â  Taking those two out, would your
testimony remain the same that the value would be over $1,500?

Â 

Â Â Â Â Â Â Â Â Â Â Â  A.Â Â Â Â Â Â Â  Yes.

Â 

Â Â Â Â Â Â Â Â Â Â Â  Â[W]hen
the State seeks to establish the value of an item of property through the
testimony of a non-owner[,] the witness must first be qualified as having
personal knowledge of the value of the property.Â Â Sullivan v. State, 701 S.W.2d 905, 908 (Tex. Crim.
App. 1986).Â  Yet, Â[i]t has long been the
rule in this State that the owner of property is competent to testify as to the
[fair market] value of his own property.Â Â Id. Â Because such testimony is an offer of the
ownerÂs best knowledge of the value of his or her property, it Âconstitutes sufficient
evidence for the trier of fact to make a determination as to value based on the
witnessÂs credibility.Â Â Jones v.
State, 814 S.W.2d 801, 803
(Tex. App.ÂHouston [14th Dist.] 1991, no pet.) (citing Sullivan, 701 S.W.2d at 909).Â  Rebuttal of the ownerÂs opinion evidence must
be accomplished through the use of cross-examination and the offer of
controverting evidence as to the value of the property. Â Id.

Â Â Â Â Â Â Â Â Â Â Â  Here,
Hobson was named as the owner in the indictment.Â  Hobson offered testimony of her best
knowledge of the value of her property.Â 
Such evidence is legally sufficient, the trier of fact having found
HobsonÂs testimony to be credible.Â 
Further, Dickens was qualified as having personal knowledge of the value
of the propertyÂÂthe property was in DickensÂ possession, and he is well
acquainted with the valuation of jewelry, having been in the jewelry business
for thirty years.Â  Neither Hobson nor
Dickens was cross-examined on the value of the jewelry, and no controverting
evidence as to its value was offered.Â  We
find the evidence of the value of the jewelry in question to be legally
sufficient.Â  BozemanÂs second point of
error is overruled.

IV.Â Â Â Â Â Â  CONCLUSION

Â 

Â Â Â Â Â Â Â Â Â Â Â  We affirm the judgment
of the trial court.

Â 

Â 

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â  Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Jack
Carter

Â Â Â Â Â Â Â Â Â Â Â  Â Â Â Â Â Â Â Â Â Â Â  Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Justice

Â 

Date Submitted:Â Â Â Â Â Â Â Â Â  February 11, 2011

Date Decided:Â Â Â Â Â Â Â Â Â Â Â Â  April 8, 2011

Â 

Publish

Â 











[1]Tex. Penal Code Ann. Â§ 31.03 (Vernon
Supp. 2010).

Â 





[2]Originally
appealed to the Twelfth Court of Appeals, this case was transferred to this
Court by the Texas Supreme Court pursuant to its docket equalization
efforts.Â  See Tex. GovÂt Code Ann.
Â§ 73.001 (Vernon 2005).Â  We are unaware
of any conflict between precedent of the Twelfth Court of Appeals and that of
this Court on any relevant issue.Â  See Tex.
R. App. P. 41.3.

Â 





[3]Others
helped with the move; Hobson hired Consuelo Venezuela and Christopher Lopez to
help pack.Â  Bozeman testified that Donald
Davis accompanied him to HobsonÂs house to assist with the move.Â  





[4]Bozeman
claims that he never saw a jewelry box while assisting with the move. 

Â 





[5]According
to Bozeman, Hobson was aware of his appointment with the manager at LoweÂs on
July 18.Â  

Â 





[6]Bozeman
was not charged with the theft of these items. 





[7]Even
though this was not a jury trial, we nevertheless employ this analysis to
determine the legal sufficiency of the evidence. Â Malik, 953 S.W.2d at 240 (the Malik test applies to nonjury or
bench trials).





[8]In
Geesa v. State, 820 S.W.2d 154, 159
(Tex. Crim. App. 1991), overruled on
other grounds by Paulson v. State, 28 S.W.3d 570 (Tex.
Crim. App. 2000), the Texas Court of Criminal Appeals expressly disavowed the
Âreasonable hypothesis analytical constructÂ for legal sufficiency
reviews.Â  





[9]Before
the introduction of the hypothetically correct jury charge doctrine, courts
considered these questions under the surplusage theory.Â  Generally, the question was whether the
indictment gave proper notice of the offense.Â 
In this area, Thomas held that
in a common theft case (no assent), it was proper to merely plead lack of
effective consent.Â  In such an instance,
consent depends entirely on the ownerÂs state of mind.Â  But when the State relies on a defendantÂs
act or omission to negate consent, the indictment must allege which of the statutory
negatives vitiated consent.Â  Geter v. State, 779 S.W.2d 403, 407
(Tex. Crim. App. 1989). 





[10]Judge
Clinton, the author of the Mills
opinion, later stated in a concurring opinion that a more precise statement
is:Â  Â[w]hen relevant at all in a
prosecution for theft, however, ÂdeceptionÂ goes to Ânature of conductÂ and
operates to render otherwise apparent consent ÂineffectiveÂ . . . . But the
deception is not in itself the ultimate Âforbidden conductÂ under Sec. 31.03,
supra.ÂÂ  Cheney v. State, 755 S.W.2d 123, 131 (Tex. Crim. App. 1988)
(Clinton, J., concurring).Â  





[11]Hobson
explained in her testimony that the yellow gold coin ring described in the
indictment as having three stones does not have three stones; rather, it has
three coins.Â  Hobson further explained
that the gold eagle coin described in the indictment as weighing five ounces
actually weighs a half ounce.Â  





[12]Exhibit
17 is a photograph of the nine items of jewelry listed in the indictment that
Bozeman delivered to DickensÂ Jewelry store.