Joe E. MILLS, Appellant,

v.

The STATE of Texas, Appellee.

No. 1094–83.

Court of Criminal Appeals of Texas, En Banc.

Dec. 23, 1986.

Timothy M. Carr, Dallas, for appellant.

Henry Wade, Dist. Atty. and R.K. Weaver, Steve Webster and Steve Springer,

Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

CLINTON, Judge.

Appellant was convicted of the second degree felony offense of theft over $10,000.00, pursuant to V.T.C.A. Penal Code, Sec. 31.03(d)(5)(B) as it appeared prior to amendment by Acts 1983, 68th Leg., p. 3244, ch. 558, Sec. 11, eff. Sept. 1, 1983. Punishment was assessed accordingly by the trial court at sixteen years confinement in the Texas Department of Corrections.

On appeal it was contended, *inter alia,* that prosecution of appellant under Sec. 31.03, supra, had been improper in that a more specific statute existed proscribing his conduct, that being V.T.C.A. Penal Code, Sec. 32.46, "Securing Execution of a Document by Deception." While observing that appellant apparently could have been prosecuted under the terms of either statute, the Dallas Court of Appeals held, in an unpublished opinion, that the two provisions are "clearly not *in pari materia* [,]" that each statute is general, neither being "special" in relation to the other, and that therefore "the State properly exercised its option as to the offense it sought to prosecute. *Alejos v. State,* 555 S.W.2d 444 (Tex. Cr.App.1977)." *Mills v. State,* No. 05–82–00580–CR, delivered October 21, 1983. We granted appellant's petition for discretionary review in order to address his contention that the court of appeals erred in so holding. See Tex.Cr.App. Rule 302(c)(2), now Tex.R.App.Pro. Rule 200(c)(2).

### I.

The indictment alleged that on or about May 27, 1981, appellant "knowingly and intentionally appropriate[d] property, other than real property, to wit: current money of the United States of America of value of at least $10,000.00, *by deception* and with-out the effective consent of H.G. Godsoe, the owner of said property, and with intent to deprive H.G. Godsoe of said property." [1] Godsoe was manager and vice-president of Bowes & Company, Inc., a Dallas insurance agency specializing in casualty policies, and a broker for Lloyds of London.

In somewhat bowdlerized form, the facts are as follows. The State's evidence showed that appellant was a wholesale dealer in antiques and collectibles who operated out of his own home, and carried merchandise with him on various buying and selling trips on the road. In November of 1980, appellant obtained a "blanket" or "floater" policy through Bowes & Company, underwritten by Lloyds, to insure against loss of or damage to "owned and consigned antiques, fine arts, collectables [sic] and jewelry" up to $150,000.00. Appellant was not required under the policy to itemize and report merchandise as it came into and left his possession.

In March of 1981, appellant's duplex in Dallas was broken into and various items were taken. As a result of this burglary appellant filed a claim on his policy and in May he collected and deposited in his own account a check for $110,000.00 in settlement from Bowes & Company. Further evidence showed that a number of the items listed on his sworn proof of loss statement had been sold or otherwise disposed of by appellant both prior and subsequent to the breakin. By the terms of the policy, if any single item claimed on the proof of loss statement proved to be fraudulent, the entire claim would be voided. In his defense appellant presented some evidence that the merchandise the State had shown to have been sold or consigned by appellant was not what was listed on the proof of loss statement. Appellant testified his insurance agent prepared the statement and that he signed it without reading it, on his agent's representation that Bowes & Company would not pay the full claim for two years if he refused.

---

**1.** All emphasis supplied by the writer of this   opinion unless otherwise indicated.

There can be no doubt that under the State's evidence a conviction would lie for second degree felony theft, under then Sec. 31.03(a), (b)(1) and (d)(5)(B). In definitional portions of the jury charge the trial court instructed the jury: that " '[a]ppropriate' means to acquire or otherwise exercise control over property other than real property." V.T.C.A. Penal Code, Sec. 31.01(5)(B); that "[c]onsent is not effective if induced by deception." Sec. 31.01(4)(A), supra; and that " '[d]eception' means creating or confirming by words or conduct a false impression of law or fact that is likely to affect the judgment of another in the transaction, [or] that the actor previously created or confirmed by words or conduct, and that the actor does not now believe to be true." Sec. 31.01(2)(A) and (B), supra.[2] The court of appeals held the evidence sufficient to establish appellant acquired $110,000.00 from H.G. Godsoe, having effectuated apparent consent by means of deception, *viz:* the fraudulent proof of loss statement. Appellant does not now assail that holding.

Instead, appellant here asserts that Secs. 31.03 and 32.46 are in pari materia, and that Sec. 32.46 is the more specific statute as pertains to his conduct in this cause, inasmuch as he secured execution of the check from the insurance company. He argues that because Sec. 32.46 carries a lower range of punishment than theft over $10,000.00, he should have been prosecuted under that provision. Sec. 32.46, supra, reads:

(a) A person commits an offense if, with intent to defraud or harm any person, he, by deception, causes another to sign or execute any document affecting property or service or the pecuniary interest of any person.

(b) An offense under this section is a felony of the third degree.

Appellant argues the court of appeals could not conclude both that he "might indeed have been charged under section 32.46," and also that "that section is clearly not *in*

*pari materia* with section 31.03[.]" We disagree, and will affirm the judgment of the court of appeals.

## II.

The rule of in pari materia is nothing more than a principle of statutory interpretation, a means of devining and giving full effect to legislative intent. Two statutes that are in pari materia are to be construed together, "each enactment in reference to the other, as though they were part of one and the same law. Any conflict between their provisions will be harmonized, if possible, and effect will be given to all the provisions of each act if they can be made to stand together and have concurrent efficacy." *Ex parte Harrell,* 542 S.W.2d 169, 171 (Tex.Cr.App.1976); *Alejos v. State,* supra, at 450; *Ex parte Wilkinson,* 641 S.W.2d 927, 931 (Tex.Cr.App. 1982); all quoting from 53 Tex.Jur.2d, Statutes, Sec. 186, pp. 281–83. Statutes may be said to be in pari materia "when they relate to the same person or thing, to the same class of persons or things, or have the same purpose or object. Characterization of the object or purpose is more important than characterization of subject matter in determining whether different statutes are closely enough related to justify interpreting one in light of the other." *Ex parte Wilkinson,* supra at 932, quoting what may currently be found at Singer, Sutherland Statutory Construction, Vol. 2A, Sec. 51.03, p. 467 (4th ed. 1984).

Furthermore:

"General and special acts may be in pari materia. If so, they should be construed together. Where one statute deals with a subject in general terms, and another deals with a part of the same subject in a more detailed way, the two should be harmonized if possible; but if there is any conflict, the latter will prevail, regardless of whether it was passed prior to the general statute, unless it appears that the legislature in-

---

**2.** Although the word "or," which we have supplied in the text, does not actually appear in the court's charge, thus presenting the jury with a

somewhat confused definition of "deception," appellant has nowhere complained of this defect, and we do not address it here.

**414**

tended to make the general act controlling."

Singer, supra, Sec. 51.05, p. 499. This echoes that provision of our Code Construction Act, made applicable here under V.T.C.A. Penal Code, Sec. 1.05, regarding the relationship between general and special statutory provisions, *viz:*

"(a) If a general provision conflicts with a special or local provision, the provisions shall be construed, if possible, so that effect is given to both.

(b) If the conflict between the general provision and the special or local provision is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later enactment and the manifest intent is that the general provision prevail."

Tex.Gov.Code Ann., Sec. 311.026, formerly Art. 5429b–2, Sec. 3.06, V.A.C.S.

In construing penal provisions this Court has on a number of occasions found two statutes to be in pari materia, where one provision has broadly defined an offense, and a second has more narrowly hewn another offense, complete within itself, to proscribe conduct that would otherwise meet every element of, and hence be punishable under, the broader provision. In the case in which the special statute provides for a lesser range of punishment than the general, obviously an "irreconcilable conflict" exists, and due process and due course of law dictate that an accused be prosecuted under the special provision, in keeping with presumed legislative intent. Accordingly, where range of punishment under what is perceived to be the more specifically defined offense is less than that for the broader, and especially where the convicting court would be deprived of subject matter jurisdiction in a prosecution under the specific provision, this Court has not hesitated to reverse convictions obtained under the broader provision. *Ex parte Harrell,* supra (Because the prosecution should have proceeded under the more specific misdemeanor offense of forgery, under V.T.C.A. Penal Code, Sec. 32.21, con-

viction under the broader felony offense of unlawful use of a criminal instrument, under V.T.C.A. Penal Code, Sec. 16.01, was set aside.); *Jones v. State,* 552 S.W.2d 836 (Tex.Cr.App.1977) (The district court lacked jurisdiction in prosecution which, though brought under the provisions of felony theft, Sec. 31.03, supra, should have been prosecuted under the narrower proscription against welfare fraud in Art. 695c, V.A.C.S., since repealed.); *Williams v. State,* 641 S.W.2d 236 (Tex.Cr.App.1982) (Finding the offense of hindering a secured creditor under V.T.C.A. Penal Code, Sec. 32.33, to be theft perpetrated against a particular class of people, of a particular type of property, and by specifically enumerated means, a panel of the Court held prosecution under the broader theft statute, carrying a greater punishment due to the value of the property involved, to have been improper.); *Tawfik v. State,* 643 S.W.2d 127 (Tex.Cr.App.1982) (Prosecution should have proceeded under V.T.C.A. Penal Code, Sec. 32.22, for the offense of criminal simulation, a misdemeanor, rather than under felony theft.). Cf., *Hines v. State,* 515 S.W.2d 670 (Tex.Cr.App.1974) (Defendant properly punished under the provisions of Art. 802c, V.A.P.C., proscribing felony murder by automobile, rather than the broader provision of Art. 6701d, Sec. 50(A), V.A.C.S., a misdemeanor.). When, on the other hand, prosecution proceeds erroneously upon the broader provision, but results in a lesser punishment than that provided under the more specific statute, the Court has held a defendant "should not be allowed to rely on" the above line of cases to obtain reversal. *Sanford v. State,* 634 S.W.2d 850, 852 (Tex.Cr.App.1982). See also *Boyette v. State,* 632 S.W.2d 915 (Tex. App.—Houston [14th] 1982).

The court of appeals in the instant case observed that Secs. 31.03 and 32.46 are "both ... broad and general statutes having different elements of proof and different purposes and objectives." Therefore, relying on *Alejos v. State,* supra, it concluded the statutes were not in pari materia, and though appellant's conduct may have subjected him to prosecution under

either, the State could properly choose which to prosecute.

In *Alejos* the defendant asserted he should have been prosecuted for the misdemeanor offense proscribed under Art. 6701d, Sec. 186, V.A.C.S., of failing to stop his vehicle upon the signal of a uniformed police officer. Instead he had been prosecuted under V.T.C.A. Penal Code, Sec. 38.-04, for fleeing in any manner a recognized police officer who was attempting lawfully to *arrest* him. The Court concluded that "while the same subject is treated they are in different acts having different objects, intended to cover different situations and apparently not intended to be considered together." For these reasons the statutes were found not to be in pari materia. Because the officer had had probable cause actually to arrest the defendant, rather than simply pull him over, the Court concluded a violation of Sec. 38.04 occurred, and prosecution under that provision had been appropriate. See also *Christiansen v. State*, 575 S.W.2d 42, 45 (Tex.Cr.App. 1979).

As did the court of appeals, we reach a similar conclusion in the instant case.

### III.

Sec. 31.03, supra, "creates a new offense, which, in general terms, encompasses all acquisitive conduct previously made unlawful in several separate offenses." Practice Commentary, at p. 414. See also V.T.C.A. Penal Code, Sec. 31.02, and Practice Commentary. The purpose of this consolidation effort was to remove the "distinctions between the various offenses [which] were unnecessary for establishing the point at which acquisitive conduct becomes criminal—that can be done generally—" and to disentangle the courts from "nice questions about the appropriateness of conviction under one offense label as opposed to another[,]" which served merely to "place unnecessary obstacles before the conviction of the guilty." *Id.*, at 266. "Thus, the varying misleading emphases on aspects of acquisitive conduct proscribed under former penal codes were sifted out by the new, and

a single offense was distilled from the common elements contained in each[.]" *McClain v. State*, 687 S.W.2d 350, 353 (Tex.Cr.App.1985).

Clearly, then, the purpose and objective of the legislature in promulgating Sec. 31.-03, supra, was to abolish the various particularized "aspects" of acquisitive conduct, and to replace them with a generalized standard against which the lawfulness of acquisitive conduct can be measured. The gravaman of the offense remains the penalization of unlawful *acquisitive conduct.* Accordingly, the "nature of the forbidden conduct" under theft as defined in Sec. 31.03(a), supra, is appropriation of property. To constitute an offense, the appropriation must be accompanied by the specific intent to deprive the owner of the property. Appropriation is rendered "unlawful" according to the "circumstances surrounding" that conduct, *viz:* that it is, and the actor knew it to be, V.T.C.A. Penal Code, Sec. 6.03(b), without the owner's effective consent, Sec. 31.03(b)(1). "With this crucial feature, the acquisitive conduct is clearly 'unlawful.' See *Lugo-Lugo v. State*, 650 S.W.2d 72 (Tex.Cr.App.1983) (Opinion concurring on state's motion for rehearing)." *McClain v. State*, supra, at 354.

It is in the use of deception that the point of intersection between Secs. 31.03 and 32.-46, both supra, occurs. When relevant at all in a prosecution for theft, however, "deception" goes to "circumstances surrounding the conduct" of the accused, in that deception operates to render otherwise apparent consent "ineffective." Sec. 31.-01(4)(A), supra. That the accused consciously acted to perpetrate the deception in order to obtain that consent only serves to prove his knowledge that it was, in fact, ineffective. But the deception is not of itself "forbidden conduct" under Sec. 31.03, supra.

By contrast, in Sec. 32.46, supra, the "forbidden conduct" *is* deception. To be sure, before it may be prosecuted, such conduct must be perpetrated with the specific "intent to defraud or harm any person," and it must "cause[ ] another to sign

or execute any document[,]" (the "result of conduct"). When the document so signed or executed is one "affecting property or service or the pecuniary interest of any person[,]" (the "circumstances surrounding the conduct"), the offense is complete. But, while it is thus true that before an offense can be committed, a document must be signed or executed which would affect property (*or* services *or* the pecuniary interest of any person, which, it should be noted, are *not* covered by Sec. 31.03, supra), there is simply no requirement that property be "appropriated" for the offense to occur. Sec. 32.46, supra, was intended to proscribe conduct that is deceptive, not acquisitive.

 Furthermore, in some respects, securing execution of a document by deception is a broader proscription than theft, rather than more specific. To begin with, "deception" under Sec. 32.46, supra, is not specifically defined under Chapter 32 of the Penal Code. While the definitions of deception contained in Sec. 31.01(3), supra, "may provide some guidance" to courts in determining its meaning here, Practice Commentary, at p. 671, certainly the courts are not limited to those definitions in construing Sec. 32.46, supra. In fact, in consolidating prior Arts. 1000 and 1001, V.A. P.C. (1925), into the single Sec. 32.46, supra, the legislature clearly intended to cover "any form of deception[,]" not just the limited examples recited in earlier codes. Practice Commentary, at p. 671. Additionally, the specific "intent to defraud or harm" that is required under Sec. 32.46,

supra, is broader than the specific "intent to deprive" in theft, compare Sec. 31.01(3), supra, and V.T.C.A. Penal Code, Sec. 1.07(16); [3] and while in theft that intent is directed toward the "owner" of the property appropriated, in Sec. 32.46, supra, the deception may be with intent to harm "any person."

For these reasons we agree with the court of appeals that Secs. 31.03 and 32.46, supra, are not in pari materia, but "that both are broad and general statutes having different elements of proof and different purposes and objectives," neither representing a specific instance of commission of the other. This being the case, neither statute may be said to control the other, and no legal principle we know of mandates that appellant be prosecuted only under the one carrying the lesser range of punishment. Thus, assuming without deciding that appellant could have been prosecuted under Sec. 32.46, supra, we nevertheless hold it was proper to charge him under the provisions of felony theft.

The judgment of the court of appeals is affirmed.

TEAGUE and MILLER, JJ., dissent.

TOM G. DAVIS and McCORMICK, JJ., not participating.

---

**3.** It is true that in V.T.C.A. Penal Code, Sec. 32.22, Criminal Simulation, there is also required the specific intent "to defraud or harm," but in *Tawfik v. State,* supra, Sec. 32.22, we nevertheless found it to be a "special" provision to the general theft statute. We would suggest now that this is not the only respect in which our opinion in *Tawfik* was misguided. Apparently because the alleged and proven means of appropriation in *Tawfik* was by sale of a fake Egyptian scarab, it was held that Sec. 32.22(a)(2) more specifically applied to appellant's conduct, and hence was the provision under which he should have been prosecuted. However, that the statute proscribes "sale" of objects altered under its terms does not mean the "for-

bidden conduct" thereunder is acquisitive. In fact, Sec. 32.22(a)(2) makes it an offense if one "sells, passes, or *otherwise utters* an object" so altered. Hence, it is the guarantee of authenticity implicit in the act of selling that completes the offense, not the fact that something is obtained in return. It appears the purpose and object of Sec. 32.22, supra, is thus completely different from that of theft. Again, it is a certain type of deceptive conduct that is proscribed, not acquisitive conduct. Both statutes are general, neither representing a specific instance of commission of the other. Although we have no occasion to do so here, *Tawfik* should be overruled.