TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN




NO. 03-09-00164-CR




The State of Texas, Appellant

v.

Jeffery Porter Allen, Appellee




FROM THE DISTRICT COURT OF COMAL COUNTY, 207TH JUDICIAL DISTRICT
NO. CR2008-327, HONORABLE GARY L. STEEL, JUDGE PRESIDING


 
O P I N I O N

                        Jeffery Porter Allen was indicted for the offense of forgery of a government document
(a driver’s license). See Tex. Penal Code Ann. § 32.21 (West Supp. 2009) (defining forgery). Allen
moved to quash the indictment, arguing that although the forgery statute found in the penal code 
generally applies to the violations alleged in the indictment, the transportation code contains more
specific provisions covering the conduct at issue. See Tex. Transp. Code Ann. §§ 521.451 (West
2007), .455 (West Supp. 2010). For that reason, Allen argued that the more specific provisions
under the transportation code controlled. The trial court granted Allen’s motion and quashed the
indictment. The State appeals the trial court’s order. See Tex. Code Crim. Proc. Ann. art.
44.01(a)(1) (West Supp. 2009) (limiting grounds upon which State may appeal order of court in
criminal case). We will reverse and remand the case to the district court.
 
 
FACTUAL AND PROCEDURAL BACKGROUND
                        In 2008, the State indicted Allen for forgery of a government document, a third-degree felony under the penal code. See Tex. Penal Code Ann. § 32.21(e)(3). The indictment
alleged that Allen 
 
did . . . , with intent to defraud or harm another[,] pass, publish, or otherwise utter a
writing that was forged, knowing such writing was forged, and such writing was a
governmental record or other instrument issued by state government or a subdivision
thereof, to-wit: a Texas Driver[’]s License of the tenor following:
 
[The indictment then includes a photographic reproduction of the driver’s license that
Allen allegedly used. The name on the license is “Greg Sampson,” not Jeffery Allen. 
The record does not indicate whether other information on the license (e.g., date of
birth, address) is false or whether the individual pictured on the license is Allen.]
 
 
                        Allen filed a motion to quash the indictment. Essentially, Allen argued that the
offense alleged must be tried under various transportation code provisions rather than the forgery
statute. Moreover, Allen contended that because his alleged crime was only a misdemeanor under
the transportation code, the district court lacked jurisdiction over the case. See Tex. Code Crim.
Proc. Ann. art. 4.05 (West 2005) (limiting types of offenses that district courts have jurisdiction over
to felonies and certain misdemeanors). 
                        In response to the motion, the court held a hearing. During the hearing, no evidence
was presented regarding the allegations against Allen. Ultimately, the district court issued an order
granting Allen’s motion. The court subsequently issued findings and conclusions stating that the
transportation code provisions applied, that Allen had the right to be charged under the transportation
code, and that accordingly, the court did not have jurisdiction over the case. 
                        The State appeals the district court’s order.
 
STANDARD OF REVIEW
                        “The sufficiency of a charging instrument presents a question of law.” Smith v. State,
309 S.W.3d 10, 13 (Tex. Crim. App. 2010). Accordingly, appellate courts review a trial court’s
ruling on a motion to quash under a de novo standard. Id. at 14; see also State v. Moff, 154 S.W.3d
599, 601 (Tex. Crim. App. 2004) (applying de novo review to trial court’s decision to quash
indictment because issue was question of law and because resolution of issue did not depend on
“credibility and demeanor of witnesses”). 
 
DISCUSSION
                        In a single issue on appeal, the State alleges that the district court erred by concluding
that the provision of the forgery statute under which Allen was indicted was in pari materia with
various transportation code provisions and that Allen, therefore, had the right to be charged under
the transportation code. 
                        The doctrine of in pari materia is a principle of statutory interpretation. Mills v. State,
722 S.W.2d 411, 413 (Tex. Crim. App. 1986). The doctrine is codified in the Code Construction
Act as follows:
 
(a) If a general provision conflicts with a special or local provision, the provisions
shall be construed, if possible, so that effect is given to both.
 
(b) If the conflict between the general provision and the special or local provision
is irreconcilable, the special or local provision prevails as an exception to the general
provision, unless the general provision is the later enactment and the manifest intent
is that the general provision prevail.
 
Tex. Gov’t Code Ann. § 311.026 (West 2005); see Azeez v. State, 248 S.W.3d 182, 192 (Tex. Crim.
App. 2008) (stating that government code section 311.026 codifies doctrine of in pari materia). The
doctrine of in pari materia is employed to implement the “‘full legislative intent, by giving effect to
all laws and provisions bearing on the same subject.’” Cheney v. State, 755 S.W.2d 123, 126 (Tex.
Crim. App. 1988), quoting 53 Tex.Jur.2d, Statutes § 186 (1964), at 280.
                        We deem two criminal statutes to be in pari materia when one broadly defines an
offense and the other more narrowly defines an offense, complete within itself, that proscribes
conduct that meets every element of and would otherwise be punishable under the broader statute. 
Azeez, 248 S.W.3d at 192. Statutes that are in pari materia are construed together and, if possible,
conflicts between them are harmonized. Cheney, 755 S.W.2d at 127. If conflicts between them
cannot be harmonized—as when the narrower statute provides for a lesser punishment than the
broader statute—a defendant has a due-process right to be prosecuted under the narrower statute in
accordance with the presumed legislative intent that the more narrow statute apply. Mills,
722 S.W.2d at 414; see Juarez v. State, 308 S.W.3d 398, 405 (Tex. Crim. App. 2010) (stating that
“[w]hen interpreting statutes that are in pari materia and construed together, both are given effect
with the special governing over the general in the event of a conflict”). 
                        Courts consider several factors in determining whether two statutes are in pari
materia. See Burke v. State, 28 S.W.3d 545, 547-48 (Tex. Crim. App. 2000). The most important
factor is similarity of object or purpose, which we analyze by considering whether the statutes (1) are
contained in the same legislative act; (2) require the same elements of proof; (3) involve different
penalties; and (4) were clearly written to achieve the same objective. In re J. M. R., 149 S.W.3d 289,
292 (Tex. App.—Austin 2004, no pet.) (citing Burke, 28 S.W.3d at 547-49). When an in-pari-materia assertion is made prior to trial and, accordingly, before an evidentiary record has been
developed, a court may only conclude that two statutes are in parti materia if the charging instrument
“on its face” raises the in-pari-materia issue. See State v. Wiesman, 269 S.W.3d 769, 773-74 (Tex.
App.—Austin 2008, no pet.). 
                        With these principles in mind, we turn to the statutes at issue. Allen was charged with
forging a governmental document, namely a driver’s license. See Tex. Penal Code Ann. § 32.21(b),
(e); see also id. § 37.01(2)(C) (West Supp. 2009) (listing license as type of governmental record). 
As mentioned above, Allen urges that various provisions of the transportation code are in pari
materia with and narrower than the forgery provision at issue. In particular, Allen points to
sections 521.451 and 521.455. See Tex. Transp. Code Ann. §§ 521.451, .455. Section 521.451 lists
five categories of prohibited activities, but Allen limits his arguments to the behavior described in
subsection 521.451(a)(1). See id. § 521.451(a)(1). The other subsections proscribe displaying or
representing another’s driver’s license as one’s own, lending or permitting another to use one’s
driver’s license, possessing more than one current driver’s license, and providing false information
or making false statements when applying for “an original, renewal, or duplicate driver’s license.” 
See id. § 521.451(a)(2)-(5). There are no allegations in the indictment that would fall under any of
these prohibited activities. 
                        The subsection Allen relies on when making his in-pari-materia argument prohibits
a person from displaying, causing or permitting to be displayed, or possessing driver’s licenses that
the person knows are “fictitious” or have “been altered.” Id. § 521.451(a)(1). Allen also refers to
section 521.455, which states that “[a] person commits an offense if the person intentionally or
knowingly uses a driver’s license or certificate obtained in violation of Section 521.451


 . . . to harm
or defraud another.” Id. § 521.455. A violation under either of the transportation code provisions
is a class A misdemeanor, see id. §§ 521.451(b), .455(b), but the violation alleged under the forgery
statute is a third-degree felony, see Tex. Penal Code Ann. § 32.21(e)(3) (stating that forgery is third
degree felony if writing “is or purports to be . . . instruments issued by a state or
national government”). 
                        For the reasons that follow, we cannot conclude that the transportation code
provisions referred to by Allen are in pari materia with the forgery provision forming the basis for
the indictment.


 
                        First, the forgery statute and the transportation code provisions are not contained in
the same legislative act. The forgery provision was codified in 1973, see Act of May 23, 1973, 63rd
Leg., R.S., ch. 399, § 32.21, 1973 Tex. Gen. Laws 883, 935, whereas the transportation code
provisions were codified in 1995. See Act of April 21, 1995, 74th Leg., R.S., ch. 165, § 1, secs.
521.451, .455, 1995 Tex. Gen. Laws 1025, 1574-75. 
                        Second, the conduct prohibited by the transportation code provisions differs from that
proscribed by the forgery provisions at issue. As mentioned above, subsection 521.451(a)(1) of the
transportation code forbids people from possessing or displaying driver’s licenses that they know
are either fake or have been altered. See Tex. Transp. Code Ann. § 521.451(a)(1). As a preliminary
matter, we note that there is no allegation in the indictment stating that Allen impermissibly
possessed or displayed a fictitious driver’s license. 
                        Although possession is punishable under the transportation code, id., possession is
not punishable under the forgery provision that forms the basis for Allen’s indictment.


 The forgery
provision at issue provides that a person commits an offense “if he forges a writing with intent to
defraud or harm another.” Tex. Penal Code Ann. § 32.21(b); see also id. § 32.21(e) (elevating
degree of offense if forged writing “is or purports to be” governmental document). The statute
defines “forge” as meaning “to alter, make, complete, execute, or authenticate any writing so that
it purports” to be the act of another, to have been executed at a different time or place than it actually
was, or to be a copy of an original that does not exist. Id. § 32.21(a)(1)(A). The forgery statute also
defines “forge” as meaning “to issue, transfer, register the transfer of, pass, publish, or otherwise
utter a writing that is forged” under the definition given above. Id. § 32.21(a)(1)(B). Allen was
charged under the second definition listed in the forgery statute (subsection 32.21(a)(1)(B)). In
particular, the indictment alleged that Allen passed, published, or otherwise uttered a forged writing.
                        Because possession is not punishable under the forgery provision at issue, that
provision can only be deemed in pari materia with the transportation code forgery provisions relied
on by Allen if the forgery statute prohibits displaying or causing or permitting the display of a
fictitious driver’s license. See Tex. Transp. Code Ann. § 521.451(a)(1); Tex. Penal Code Ann.
§ 32.21(a), (b). The forgery statute does not expressly contain a display element. Accordingly, in
order for the indictment to show on its face that the two statutes are in pari materia, displaying a
driver’s license must fall under the language contained in the provision under which Allen was
indicted, which prohibits passing, publishing, or “otherwise” uttering a forged writing. See Tex.
Penal Code Ann. § 32.21(a)(1)(B). “Display” is not defined by the transportation code, but the term
is generally defined as meaning “to spread before the view: exhibit to the sight or mind: give
evidence of: show, manifest, disclose.” Webster’s Third New Int’l Dictionary 654 (2002). 
                        The terms “pass,” “publish,” and “utter” are not defined by the penal code, but
various dictionary definitions for the terms demonstrate that there is some overlap in the meaning
of those terms. For example, Black’s Law Dictionary states that “‘[p]ass,’ ‘utter’ [and] ‘publish’ . . . 
are in some respects convertible terms, and, in a given case, ‘pass’ may include utter [and] publish.” 
Black’s Law Dictionary 776 (6th ed. abridged 1991); see also Parker v. State, 985 S.W.2d 460, 464
(Tex. Crim. App. 1999) (noting that there is great deal of overlap between terms pass, utter, and
publish as used in forgery statute); Smith v. State, 762 S.W.2d 303, 304 (Tex. App.—Houston [1st
Dist.] 1988, no pet.) (stating that term “utter” is similar to term “pass”). 
                        Although the precise boundaries created by the legislature’s use of the terms “utter,”
“pass,” and “publish” are not easily ascertained, those terms seem to contemplate more than
displaying an object. For example, Black’s Law Dictionary explains that the words pass, utter, and
publish “include any delivery of a note to another for value” and equates the words with “sell” in
certain circumstances. Black’s Law Dictionary 776 (6th ed. abridged 1991). Similarly, Black’s Law
Dictionary explains that the term “utter” means “[t]o put or send (as a forged check) into circulation;
to publish or put forth; to offer. . . . To utter, as used in a statute against forgery . . . , means to offer,
whether accepted or not, a forged instrument, with the representation, by words or actions, that the
same is genuine.” Id. at 1074; see Peterson v. State, 645 S.W.2d 852, 854 (Tex. App.—Tyler 1982,
no pet.) (quoting definition of “utter” found in Black’s Law Dictionary). 
                        Support for the idea that the terms require more than merely displaying can also be
found in non-legal dictionaries. For example, “utter” has been defined as meaning “to place on the
market: offer for sale or barter: dispose of in trade: sell, vend.” Webster’s Third New Int’l
Dictionary 2526 (2002). In addition, “publish” has been characterized as connoting “to place before
the public . . . disseminate . . . to produce for publication or allow to be issued for distribution or
sale.” Id. at 1837. “Pass” has been assigned a similar definition as signifying “to go from one
person to another . . . : circulate . . . : to place in circulation: give currency to . . . : to transfer from
one person to another; cause to go from hand to hand.” Id. at 1649-50. 
                        Case law applying the terms in the forgery statute also indicates that the legislature
intended something other than simply displaying a writing. For example, the court of criminal
appeals determined that “an instrument is passed . . . if it is delivered or circulated” and that the term
“pass” includes handing a forged instrument to another but also includes situations in which there
is no manual transfer, including giving an instrument to one person and allowing that person to
transfer it to another individual in exchange for compensation. Parker, 985 S.W.2d at 464. 
However, the court also explained that satisfying the “pass” element does not necessarily “require
a showing that the defendant actually received consideration in exchange for the instrument”
but does require a showing that the defendant “offer[ed] the instrument.” McGee v. State,
681 S.W.2d 31, 31 (Tex. Crim. App. 1984); see McDonald v. State, 829 S.W.2d 378, 382 (Tex.
App.—Texarkana 1992, no pet.) (stating that passing includes handing forged instrument from one
person to another).
                        Moreover, when construing the meaning of a statute, courts must consider the whole
statute and give effect to all of the words and phrases used, if possible. See Seals v. State,
187 S.W.3d 417, 422 (Tex. Crim. App. 2005). When the words “utter,” “publish,” and “pass” are
viewed in light of the other activities prohibited by that forgery provision (“to issue, transfer, register
the transfer of” a forged writing), it seems apparent that the legislature was intending to prohibit
something more than simply displaying a fictitious writing. See Tex. Penal Code
Ann. § 32.21(a)(1)(B). This seems particularly true in this case, where the legislature listed various
prohibited activities but then included the phrase “or otherwise utter” at the end of the provision. 
See id.; see also Webster’s Third New Int’l Dictionary, 1598 (2002) (defining “otherwise” as
meaning “in a different way or manner: differently”). In other words, the legislature’s inclusion of
the word “otherwise” is some indication that the prohibited acts are similar in nature. 
                        In light of the preceding, we cannot conclude that the conduct prohibited by
subsection 521.451(a)(1) of the transportation code falls squarely within the conduct identified by 
the forgery provision at issue. Although the analogy is not precisely on point, the distinction the
legislature has made here is similar to the distinction it made between individuals who possess
controlled substances and those who sell them to others. Compare Tex. Health & Safety Code Ann.
§ 481.115 (West 2010) (prohibiting possession of controlled substances), with id. § 481.112 (West
2010) (outlawing manufacturing or delivering controlled substances as well as possession of
controlled substances with intent to deliver). In accordance with that distinction, the legislature
imposed different penalties for the two offenses. See id. §§ 481.112, .115 (setting out different
penalties for possession of defined amounts of controlled substances and for manufacturing or
distributing same amounts). Similarly, the legislature created different sanctions for violations of
the transportation code and for violations of the forgery statute. Compare Tex. Transp. Code Ann.
§§ 521.451(b), .455(b) with Tex. Penal Code Ann. § 32.21(e)(3). 
                        In addition, subsection 521.451(a)(1) of the transportation code does not have an
“intent to harm or defraud another” element like the one listed in the forgery statute. Compare Tex.
Transp. Code Ann. § 521.451(a)(1), with Tex. Penal Code Ann. § 32.21(b); see also Burke,
28 S.W.3d at 549 (concluding that statutes at issue were not in pari materia, in part, because one had
mental-state element that other lacked); In re J. M. R., 149 S.W.3d at 294-95 (same); Segura v. State,
100 S.W.3d 652, 656 (Tex. App.—Dallas 2003, no pet.) (same). 
                         When arguing that the district court’s decision was proper, Allen avers that
section 521.455 contains the intent requirement and that the statutes must be read together. 
Section 521.455 does have a “harm or defraud another” element that is similar to that found in the
forgery provision. See Tex. Transp. Code Ann. § 521.455(a). Specifically, the provision states that
“[a] person commits an offense if the person intentionally or knowingly uses a driver’s license
or certificate obtained in violation of Section 521.451 . . . to harm or defraud another.” Id.
(emphases added). 
                        Although section 521.455 refers to section 521.451, it does not provide a mental state
for a crime alleged under section 521.451; on the contrary, section 521.455 sets out the elements and
mental state for a separate offense. Id. § 521.455(a). In addition, it is not entirely clear that
section 521.455 could have any bearing on the subsection of 521.451 that Allen relies on. 
Section 521.455 requires that the State prove that the “license or certificate” was “obtained in
violation of Section 521.451.” Id. (emphasis added). In addition to prohibiting the display or
possession of a “fictitious” driver’s license, id. § 521.451(a)(1), the remaining provisions of
section 521.451 proscribe displaying or representing another’s driver’s license as one’s own, lending
or permitting another to use one’s driver’s license, possessing more than one current driver’s license,
and providing false information or making false statements on applications for “an original, renewal,
or duplicate driver’s license,” id. § 521.451(a)(2)-(5). In light of the additional prohibitions listed
in section 521.451, the “obtained in violation of Section 521.451” phrase found in section 521.455
most logically refers to the ban on providing false information or making false statements on driver’s
license applications. See id. §§ 521.451(a)(5), .455(a).


 
                        Even assuming that section 521.455 can, as urged by Allen, be read in conjunction
with subsection 521.451(a)(1) (displaying or possessing fictitious or altered licenses), we would still
be unable to conclude that section 521.451(a)(1) and 521.455 are in pari materia with the forgery
provision used in the indictment. There is no comparable “obtained in violation of” provision in the
forgery statute. Compare id. § 521.455, with Tex. Penal Code Ann. § 32.21. Moreover, as discussed
previously, the conduct prohibited by subsection 521.451(a)(1) differs from the behavior outlawed
by the forgery provision at issue. Compare Tex. Transp. Code Ann. § 521.451(a)(1), with Tex. Penal
Code Ann. § 32.21(a)(1)(B), (b). Consequently, even incorporating the “harm or defraud” element
from section 521.455 of the transportation code into the behavior described in subsection
521.451(a)(1) does not lead to a conclusion that the forgery provision at issue is in pari materia with
the transportation code provisions relied on by Allen because the elements of the offenses listed in
the transportation code provisions would still not match the elements of the prohibited behavior
identified in the forgery provision forming the basis for the indictment.


                         For these reasons, we cannot conclude that subsection 521.451(a)(1) and
section 521.455 of the transportation code are in pari materia with the forgery provision that forms
the basis for Allen’s indictment. Accordingly, we hold that the district court erred by granting
Allen’s motion to quash and that the State has the discretion to charge Allen under penal code
section 32.21. See Mills, 722 S.W.2d at 414-15. We therefore sustain the State’s issue on appeal.
 
CONCLUSION
                        Having determined that the district court erred by granting Allen’s motion to quash, 
we remand the cause for further proceedings consistent with this opinion. 
 
 
                                                                        __________________________________________
David Puryear, Justice
Before Justices Puryear, Pemberton and Goodwin
Reversed and Remanded
Filed: February 16, 2011
Publish