

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---

## NO. PD-0284-25

---

**BOBBY CARL LENNOX, APPELLANT**

**V.**

**THE STATE OF TEXAS**

---

## ON STATE'S PETITION FOR DISCRETIONARY REVIEW
## FROM THE SIXTH COURT OF APPEALS
## LAMAR COUNTY

---

**KEEL, J., delivered the opinion of the Court in which RICHARDSON, NEWELL, WALKER, and MCCLURE, JJ., joined. NEWELL, J. filed a concurring opinion, in which RICHARDSON and WALKER, JJ., joined. PARKER, J., filed a concurring opinion. FINLEY, J., concurred. SCHENCK, P.J., filed a dissenting opinion. YEARY, J., filed a dissenting opinion, in which SCHENCK, P.J., joined.**

## O P I N I O N

This is a forgery case.  We granted the State's petition for discretionary review to decide whether the court of appeals correctly decided (1) error preservation and (2) the standard of review for jury charge error.  It did.  We affirm its judgment.

## I.    Trial and First Appeal

In 2019 Appellant passed three checks stolen from an estate sale.  The checks were made out to him and drawn on the account of and purportedly signed by James McKnight—the dead man whose estate had been up for sale.  Their amounts were between $100 and $750, and Appellant cashed them at a convenience store.

The indictment alleged three counts of check forgery.  Except for the offense dates and the amounts and images of the checks, the counts were identical.  They alleged: "[Appellant]…did then and there, with intent to defraud or harm another, pass to Nima Sherpa, a forged writing, knowing such writing to be forged…, and the writing was a check…."

The jury charge corresponded to the indictment's allegations and instructed the jury:

> [I]f you find from the evidence beyond a reasonable doubt that…the Defendant…did then and there, with intent to defraud or harm another, pass to Nima Sherpa, a forged writing, knowing such writing to be forged, and such writing had been so made or completed that it purported to be the act of James McKnight, who did not authorize the

act, and the writing was a check, then you will find [Appellant] *Guilty* of the offense of Forgery of a Financial Instrument as charged....

Appellant did not object to the indictment or the jury charge but claimed on appeal that he had been convicted and punished for felony forgeries under the wrong subsection of the forgery statute. *See* Tex. Penal Code § 32.21(d), (e-1).[1]

The court of appeals agreed with Appellant, modified the felony convictions to Class B misdemeanors, and remanded for a new punishment hearing. *Lennox v. State*, 613 S.W.3d 597, 607 (Tex. App.—Texarkana 2020, pet. granted) ("*Lennox I*"). We granted the State's petition for discretionary review and consolidated *Lennox I* with another forgery case, yielding *State v. Green*, 682 S.W.3d 253, 276 (Tex. Crim. App. 2024).

## II.    *State v. Green*

*Green* addressed the 2017 amendments to the forgery statute that added new offense-level classifications to it. *Id.* at 256; *see* Tex. Penal Code § 32.21.

The statute said that a person commits forgery "if he forges a writing with intent to defraud or harm another." Tex. Penal Code § 32.21(b). This generic forgery was a Class A misdemeanor "[e]xcept as provided by Subsections (d), (e), and (e-1)[.]" *Id.* § 32.21 (c). Subsection (d) read, "Subject to Subsection (e-1), an

---

[1] This opinion refers exclusively to the version of the forgery statute in effect in 2019. *See* Act of Sept. 1, 2017, 85th Leg., H.B., ch. 977, § 25 (amended 2023) (current version at Tex. Penal Code Ann. § 32.21).

offense under this section is a state jail felony if the writing is or purports to be a . . .

check[.]" *Id.* § 32.21 (d).  Subsection (e-1) specified offense levels from Class C

misdemeanors to first-degree felonies that depended on the forger's purpose and a

value ladder.  *Id.* § 32.21(e-1).  As pertinent here it read:

> (e-1) If it is shown on the trial of an offense under this section that the actor engaged in the conduct to obtain or attempt to obtain a property or service, an offense under this section is:
>
> ***
>
> (2) a Class B misdemeanor if the value of the property or service is $100 or more but less than $750[.]

*Id.*

*Green* disentangled § 32.21's "competing offense-classification provisions"

and held that subsections (d) and (e) were "subordinate to subsection (e-1)" if (e-

1)'s purpose element was shown and that (e-1) was an offense element and not a

punishment issue.  *Green*, 682 S.W.3d at 258.  Forgery may be prosecuted under

subsections (b), (d), (e), or (e-1); "[e]ach subsection constitutes a facially valid

offense that the State may rely upon in *charging* a forgery by tracking the statutory

language." *Id.*  A prosecution under any of these subsections would be a "complete

and valid offense that the State may" prosecute.  *Id.* at 277.

If a defendant were charged with forgery under subsections (d) or (e), but the

facts at trial raised subsection (e-1), then he would be "entitled to be *convicted* and

*punished* under the provisions in the value ladder" if a lower offense level and range of punishment would result. *Id.* at 258–59. In that circumstance, the State would have charged the wrong subsection of § 32.21; the defendant could object at trial, and the error could "be remedied by the trial court or on appeal, subject to any applicable preservation requirements." *Id.* at 259.

*Green* held that the State could charge and prosecute a check forgery under either subsection (d) or (e-1). *See id.* at 277–78. On the one hand, if it initiates prosecution under subsection (d), but "the facts show that the defendant's offense also falls under the value ladder in subsection (e-1) and (e-1) would result in a reduced offense classification, then the defendant is entitled to be convicted and punished under subsection (e-1)." *Id.* at 278. On the other hand, if the State has information showing that the defendant committed forgery for the purpose of obtaining property or services, then "it would be the better practice for the State to charge the offense under subsection (e-1)." *Id.* at 279.

*Green* upheld the result reached by the court of appeals in *Lennox I* but remanded for consideration of possible error preservation requirements. *Green*, 682 S.W.3d at 278.

## III.    *Lennox II*

On remand, the court of appeals reached the same result it had reached in its first opinion. *Lennox v. State*, No. 06-19-00164-CR, 2025 WL 793896, at *7 (Tex. App.—Texarkana March 13, 2025) (mem. op., not designated for publication) (*Lennox II*). It noted the lack of objection to the jury charge at trial but held that the unobjected-to jury charge error was egregiously harmful. *Id.* at *5, 7 (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g)). It again modified the convictions to Class B misdemeanors and remanded the case to the trial court for a new trial on punishment. *Id.* at *7.

## IV.    The State's Second Petition for Discretionary Review

The State's second petition for discretionary review raises two issues about preservation and the standard of review.

### IV.A.  First Issue

The first issue asks:

> On Remand, Did The Court Of Appeals Correctly Decide Whether, And Under What Circumstances, Any Defendant-Including The Appellant (Lennox)-Might Raise A Claim That He Was Being Prosecuted Under The Wrong Statutory Subsection [32.21(e-l)]-As This Court Directed In *Green* v. *State,* 682 S.W.3d 253,278 (Tex. Crim. App. 2024)-Or, Upon "De Novo" Review, Was Error Not Preserved On This Important Question Of State Law?

The State points out that *Green* did not decide the preservation issue but left "it to the court of appeals" to decide. *Green*, 682 S.W.3d at 278. The State suggests that

the court of appeals neglected the preservation issue in violation of *Green*'s directive. *Green*'s remand about preservation, however, was conditional. *Green* told the lower court to address preservation "to the extent doing so is necessary to resolve the remaining issues before it." *Id.*

A preservation analysis was not necessary because *Green* held that subsection (e-1) was an element of the offense if raised at trial. *Id.* at 275. A trial court must instruct on offense elements even absent objection because they are law applicable to the case. *See Posey v. State*, 966 S.W.2d 57, 60, 62 (Tex. Crim. App. 1998) (holding that Tex. Code Crim. Proc. art. 36.14 imposes on the trial court a *sua sponte* duty to instruct on the law applicable to the case, and any resulting error from a failure to so instruct is subject to the *Almanza* egregious harm standard). Because the error stemmed from the trial court's failure to instruct the jury on law applicable to the case, there was no need to address preservation. Instead, the court of appeals correctly reviewed the error for egregious harm. *Lennox II*, 2025 WL 793896, at \*5-7.

The State also argues that the court of appeals had to address preservation because Appellant forfeited subsection (e-1)'s application to his case by not objecting to the indictment. But there was no basis for objection to the indictment. It alleged "complete and valid" check forgeries under subsection (d). *See Green*,

682 S.W.3d at 277–78.  Finally, the State argues that Appellant forfeited his right to a jury instruction on subsection (e-1) because it was a defensive issue.  *Green* foreclosed this argument, however, when it held that subsection (e-1) was not a punishment issue, but "a distinct forgery-to-obtain-property-or-services offense that may result in either an aggravated or reduced offense level as compared to the Class A misdemeanor default."  *Id.* at 275.  Because check forgery under subsection (d) is "[s]ubject to" subsection (e-1)'s elements, those elements are law applicable to the case if they are shown at trial and would result in a reduced conviction.  *See id.* at 278; Tex. Penal Code § 32.21 (d), (e-1).

Judge Yeary's dissenting opinion echoes the State's position but justifies doing so by reading too much into *Green*'s mention of the *in pari materia* doctrine.  The doctrine is "nothing more than a rule of statutory construction[.]" *Mills v. State*, 722 S.W.2d 411, 413–14 (Tex. Crim. App. 1986).  It asks if multiple statutes deal with the same subject, purpose, person, thing, or class.  *Azeez v. State*, 248 S.W.3d 182, 191 (Tex. Crim. App. 2008).  But Judge Yeary would apply it to a single statute and ask an absurdity: "Does this statute deal with the same subject matter as itself?"  He makes other mistakes, too, misreading both *Green* and § 32.21.

First, he claims that *Green* "described the *in pari materia* issue as no more than a 'defensive matter.'"  But *Green* did not say that § 32.21 suffered from an *in*

*pari materia* issue or that subsection (e-1) was a "defensive matter." Instead, it likened the relationship between subsections (e-1) and (d) to the relationship between two statutes that are *in pari materia*. *Green*, 682 S.W.3d at 278. It concluded, however, that the statute defined "four distinct forgery 'crimes,' each with a different statutory maximum[.]" *Id.* at 277. It held that "whenever the triggering terms in subsection (e-1) are satisfied…, the offense classifications in subsection (e-1) must control." *Id.* at 278. Moreover, *Green* found it "highly unlikely" that the Legislature meant for low-value forgers "to be initially charged with felonies, only to have their offenses reduced to misdemeanors at the punishment phase (and even then, only if they raise an issue under Subsection (e-1) as a defensive matter)." *Id.* at 275. In short, Judge Yeary mischaracterizes *Green*'s reasoning and holding about subsection (e-1).

Second, Judge Yeary claims that *Green* required the "*in pari materia*" issue to be raised in the trial court, but *Green* didn't do that, either; it left preservation for the court of appeals to decide. *Id.* at 278. Given that *Green* rejected the idea that subsection (e-1) was a "defensive matter" and instead characterized it as a separate offense that controlled over subsection (d) if raised by the evidence, the court of appeals correctly decided that preservation was not required.

As for the statute, Judge Yeary mostly ignores its pivotal "subject to" language and its central role in *Green*'s reasoning and conclusion. When he finally notices the phrase, he distorts it with a "flip-side scenario" that he mistakes for a hard question—would a trial court have to increase the punishment for a check fraud case indicted under subsection (d) if the evidence showed the forgery was committed for a $30,000 gain? The answer is an easy and obvious "no." An uncharged greater offense cannot legitimately manifest itself at trial—it must be pled. *Apprendi v. New Jersey*, 530 U.S. 466, 476 (2000). And *Green* already suggested that answer, so he missed that, too. *See Green*, 682 S.W.3d at 258–59, 278.

Finally, Judge Yeary bewails requiring trial courts to *sua sponte* instruct on the law applicable to the case, characterizing the requirement as "anomalous" and suggesting that it runs counter to our adversarial system. But the requirement is pervasive, and it enjoys a longstanding statutory and jurisprudential pedigree without having damaged our adversarial system. *See* Tex. Code Crim. P. art. 36.14; *Posey*, 966 S.W.2d at 60, 62.

In sum, the State's first issue must be answered in the affirmative: the court of appeals correctly decided the preservation issue.

**IV.B. Second Issue**

The State's second issue asks: "On Remand, Did The Court Of Appeals In *Lennox* Correctly Apply The Standard Of Review For Alleged Jury-Charge Error?" In support of this issue, the State argues that there was no jury-charge error. It is mistaken because the jury charge omitted an (e-1) instruction even though (1) the evidence showed that Appellant committed his forgeries for the purpose of obtaining money, and (2) the application of the value ladder would have resulted in lesser convictions. *See id*. at 278. The jury charge erroneously omitted (e-1)'s purpose element and value ladder. *See id*. The court of appeals correctly determined that the evidence raised subsection (e-1) and that its omission from the jury charge was egregiously harmful because it foreclosed the possibility of a misdemeanor conviction and punishment range.[2] *Lennox II*, 2025 WL 793896, at *5-7.

## V.  Conclusion

The court of appeals correctly decided that the jury charge error did not require preservation and was egregiously harmful because it omitted offense elements that might have subjected Appellant to a lower conviction level. We affirm its judgment.

---

[2] Since we agree with those holdings, we doubt that its disposition reforming the judgment was correct. But because neither party contested the disposition, we do not address it.

Delivered: January 29, 2026

Publish