In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00055-CR

                                                ______________________________

 

 

                                         JOHN BOZEMAN,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                       On Appeal from the 349th
Judicial District Court

                                                           Houston County, Texas

                                                         Trial Court
No. 08CR-042

 

                                                     
                                             

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                                          Opinion by Justice Carter








                                                                   O P I N I O N

 

            John
Bozeman was indicted for the theft[1]
of nine pieces of jewelry from Cathy Hobson. 
After a bench trial, Bozeman was found guilty and was sentenced to
eighteen months’ imprisonment in the Texas Department of Criminal Justice–State
Jail Division.[2]  On appeal, Bozeman claims that (1) the judgment
is not supported by constitutionally sufficient evidence; and (2) the judgment
is not supported by appropriate evidence of the value of the items alleged to
have been stolen.  We affirm the judgment
of the trial court. 

I.          BACKGROUND

 

            Bozeman and Hobson
went to school together and have known each other most of their lives.  In July 2006, when Hobson was preparing to
move from a small house to a larger house next door, Bozeman offered the use of
his truck and trailer to assist in the move. 
The moving process commenced on Monday, July 17.[3]  Hobson testified that on that date, Bozeman
moved both of her jewelry boxes from the smaller house to the upstairs bedroom
of the larger house.  Bozeman was aware
of the location of the jewelry boxes because Hobson directed him to place them
in a drawer next to her bed.  At that
time, there was nothing missing from either of the jewelry boxes.[4]  

            On
the second day of the move, Tuesday, July 18, Bozeman asked Hobson to take her
son to a babysitter, as Bozeman could not get any work done with the child
underfoot.  Hobson agreed and took her
son to a friend’s house a few blocks away. 
Hobson returned approximately forty-five minutes later, only to find
that Bozeman was gone.  Baffled by his
disappearance, Hobson called Bozeman on his cell phone only to be told that he
was at Lowe’s in Palestine purchasing a lawn mower for his father.[5]  

            When
Hobson’s husband arrived home from work on the evening of July 18, Hobson
showed him what had been accomplished at their prospective new home.  When Hobson noticed that an antique music box
and an antique adding machine[6]
were both missing, she immediately went upstairs to check her jewelry
boxes.  Hobson discovered that some of
her jewelry was missing and filed a report with the local police that same
evening.  Hobson never questioned Bozeman
about the missing items of jewelry, as she suspected he was responsible for
their disappearance.  

            Approximately
three weeks later, when Hobson learned Bozeman was having work done on one of his
rings at Charles Dickens’ jewelry store in Palestine, she paid a visit to
Dickens.  After having been presented
with a copy of the police report, Dickens agreed to show Hobson several items
of jewelry Bozeman brought to the store. 
Hobson identified nine of those items of jewelry as belonging to
her.  At trial, Dickens testified that
Bozeman brought those nine items of jewelry into his store on July 19, 2006,
the day after Hobson’s jewelry was reported missing.  Bozeman denies any involvement in the disappearance
of Hobson’s jewelry; the jewelry boxes were dusted for fingerprints, but no
discernible prints were obtained.  

II.        The Evidence Is Legally
Sufficient to Support the Finding of Unlawful Appropriation

 

            In
his first point of error, Bozeman generally claims the evidence is legally
insufficient to support the trial court’s verdict.  In reviewing the legal sufficiency of the
evidence, we review all the evidence in the light most favorable to the jury’s
verdict to determine whether any rational jury could have found the essential
elements of the charged offense.  Brooks v. State, 323 S.W.3d 893, 902
n.19 (Tex. Crim. App. 2010) (4-1-4 decision) (citing Jackson v. Virginia, 443 U.S. 307, 319 (1979)); Hartsfield v. State, 305 S.W.3d 859, 863
(Tex. App.––Texarkana 2010, pet. ref’d) (citing Clayton v. State, 235 S.W.3d 772, 778 (Tex. Crim. App.
2007)).  Our rigorous legal sufficiency
review focuses on the quality of the evidence presented.  Brooks,
323 S.W.3d at 917–18 (Cochran, J., concurring). 
We examine legal sufficiency under the direction of the Brooks opinion, while giving deference
to the responsibility of the jury “to fairly resolve conflicts in testimony, to
weigh the evidence, and to draw reasonable inferences from basic facts to
ultimate facts.”  Hooper v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing Jackson, 443 U.S. at 318–19).

            Legal
sufficiency of the evidence is measured by the elements of the offense as
defined by a hypothetically correct jury charge.  Malik
v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).[7]  The hypothetically correct jury charge “sets
out the law, is authorized by the indictment, does not unnecessarily increase
the State’s burden of proof or unnecessarily restrict the State’s theories of
liability, and adequately describes the particular offense for which the
defendant was tried.”  Id. 
This standard ensures that a judgment of acquittal is reserved for those
situations in which there is an actual failure in the State’s proof of the
crime, rather than a mere error in the jury charge submitted.  Id.  This standard also applies to bench
trials.  Id. 

            A.        Appropriation of Property 

 

            The
first issue is determined by an analysis of the evidence to determine if it is
sufficient to justify finding that Bozeman appropriated the property.  Bozeman points to his own testimony, which
accounts for his acquisition of the jewelry in question from sources other than
Hobson.  First, Bozeman maintains that he
purchased two of the items of jewelry at a pawn shop in Crockett.  The record is not clear as to which two items
Bozeman claims were so purchased.  John
Smock, the owner of the pawn shop in Crockett, testified that he has known
Bozeman for fifteen years and that Bozeman has purchased several pieces of
jewelry from Smock over the years, similar to the rings depicted in State’s
exhibit seventeen (a photograph of the nine items of jewelry located in
Dickens’ jewelry store).  Next, Bozeman
testified that the coin he is accused of stealing from Hobson (actually a
.5-ounce coin, rather than a 5-ounce coin) was given to him by his father,
Charles Bozeman.  Charles testified that
he purchased a 2000 Liberty gold coin for Bozeman in March 2001.  Bozeman testified that the wedding band
(otherwise not identified) was given to him by his father as well when his father
outgrew it.  

            Bozeman
contends that the remaining five items of jewelry he was convicted of stealing
from Hobson were items he purchased from a man by the name of Dennis
Denby.  Bozeman maintains that Denby sold
the items for Otis Johnson, who needed the money to pay his electric bill.
Denby testified that in early August 2006, he introduced Bozeman to a man that
had some jewelry to sell.  Denby took the
man (identified by Bozeman as Johnson) to Bozeman, who purchased the
jewelry.  Bozeman introduced a sales
receipt at trial for these five items, dated August 7, 2006.  According to Bozeman, Denby signed the
receipt “Dennis Denby sold for Otis Johnson” on the date of the
transaction.  Denby testified that
Bozeman approached him a few days after the sale and asked him to sign the
receipt.  

            Bozeman
maintains on appeal that the weakness of the State’s evidence, in conjunction
with the evidence accounting for Bozeman’s legal acquisition of the jewelry,
can lead only to the conclusion that the evidence failed to establish Bozeman’s
guilt beyond a reasonable doubt.  He
complains that the State’s evidence is largely circumstantial and that it
failed to eliminate any other reasonable alternative, such as the sale of the
jewelry to Bozeman by a third party.[8]  The lack of direct evidence is not
dispositive of the issue of Bozeman’s guilt. 
Circumstantial evidence is as probative as direct evidence in
establishing the guilt of an actor, and circumstantial evidence alone can be
sufficient to establish guilt.  Hooper, 214 S.W.3d at 13.  Further, the standard of review on appeal is
the same for both direct and circumstantial evidence cases.  Guevara
v. State, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004).  

            As
a reviewing court, it is our job to view the evidence in the light most
favorable to the verdict to determine whether any rational fact-finder could
have found the essential elements of the offense beyond a reasonable
doubt.  Further, we defer to the finder
of fact to resolve conflicts in the evidence and to determine the credibility
of that evidence.  Here, the trial court
was free to believe Hobson’s testimony and to discount the testimony of Bozeman
and Denby.  Given the fact that Dickens
testified that Bozeman brought all nine pieces of jewelry into his store on July 19,
and the receipt for the sale of five items of jewelry shown to have been
purchased by Bozeman was signed on August 7, it appears that this is
exactly what the trial court did.  In
viewing the evidence in the light most favorable to the trial court’s verdict,
a rational fact-finder could have found that Bozeman unlawfully appropriated
jewelry belonging to Hobson.

            B.        Effective Consent 

 

            The indictment states, in pertinent
part, that John Bozeman:

 

[O]n or about
July 18, 2006 and before presentment of this Indictment, in said County and
State, did then and there:  unlawfully
appropriate, by acquiring or otherwise exercising control over, property,
to-wit:  Men’s Yellow/gold 3 stone
wedding band, small yellow solitaire ring, Men’s nugget solitaire ring, 3.7mm
wedding band, Ladies 3 stone with sapphire accent ring, lady’s 2 tone
engagement ring, w/3 stones, Yellow gold coin ring w/3 stones, 5oz gold eagle
coin, Gold watch chain and faub [sic], of the value of $1,500 or more
but less than $20,000, from Cathy Hobson, the owner thereof, without
the effective consent of the owner, namely, by deception, and with
intent to deprive the owner of the property.

 

            Due
process requires that the State prove, beyond a reasonable doubt, every element
of the crime charged.  Jackson, 443 U.S. 313.  Bozeman contends that because the indictment
alleged only one means of committing theft—by deception—the State was required
to prove that particular means.  Bozeman
argues that because there is no evidence of deception, the evidence is legally
insufficient to sustain his conviction. 
The State maintains that it proved theft by deception as alleged in the
indictment.  Even though neither party
argues the effect of applying the hypothetically correct jury charge analysis
to the facts, we must do so in determining the sufficiency of the
evidence.  Malik, 953 S.W.2d at 240.


            A
person commits the offense of theft if he or she unlawfully appropriates
property with intent to deprive the owner of property.  Tex.
Penal Code Ann. § 31.03.  The
gravamen of the offense is the unlawful acquisitive conduct.  To constitute an offense, the appropriation
must be accompanied by the specific intent to deprive the owner of the
property.  Appropriation is unlawful based
on the circumstances surrounding the conduct—that the actor knew it to be
without the owner’s effective consent.  Mills v. State, 722 S.W.2d 411, 415
(Tex. Crim. App. 1986).  

            Consent
means “assent in fact whether express or apparent.”  Tex.
Penal Code Ann. § 1.07(a)(11) (Vernon Supp. 2010).  In the classical theft case, the proof from
the owner is that he or she did not consent to the accused’s taking the
property; Hobson testified that she never consented to Bozeman taking her
property.  But Bozeman argues that
evidence is not sufficient, and the State must also prove that Bozeman acted
with deception.  If property is taken by
deception, even if taken with the owner’s consent, that deception renders the
owner’s consent ineffective.  Typically,
this occurs in a contractual matter where one party consents to the other
receiving the property, but alleges that consent was gained by false promises
and the like.  See Tex. Penal Code Ann.
§ 31.01(1)(A) (Vernon Supp. 2010). 

            We
must determine if proof of deception is an alternative method of a manner and
means of committing an element of an offense of theft; if the indictment
alleges only one manner or means in the indictment, it is “the law” for
purposes of the hypothetically correct charge. 
Gollihar v. State, 46 S.W.3d
243, 255 (Tex. Crim. App. 2001) (citing Curry
v. State, 30 S.W.3d 394, 405 (Tex. Crim. App. 2000)).  Elements of the offense means:   (A) the forbidden conduct; (B) the required
culpability; (C) any required result; and (D) the negation of an exception to
the offense.  Tex. Penal Code Ann. § 1.07(a)(22) (Vernon Supp. 2010).  

            With
this in mind, we examine the elements of the offense and the alternatives of
theft. 

            The
hypothetically correct jury charge requires the following elements and
statutory alternatives in the indictment that must be proved:  

            (1)        “A person”—Bozeman—31.03(a) 

            (2)        appropriated property—31.03(b) (the act
of appropriation) 

                                    definitions of appropriate:

                        a.         not applicable 31.01(4)(A) or 

            b.         acquired
or otherwise exercised control over property other than real property 

                        (in
this case, the described jewelry) 

            (3)        Unlawfully
(the character of appropriation) 

                        a.         without
the owner’s effective consent—31.03(b)(1)

                        b.         not
applicable—31.03(b)(2) (stolen property)

                        c.         not
applicable—31.03(b)(3) (property in custody of law enforcement) 

            (4)        With intent to deprive the owner of the
property (required culpability).

 

            “Deprive”
is defined as:  

 

A.        to withhold property from the owner
permanently or for so extended a period of time that a major portion of the
value of the property is lost to the owner—31.01(2)(A)

            B.        not applicable—31.01(2)(B)

            C.        not applicable—31.01(2)(C) 

 

            Direct
evidence or evidence from which logical inferences may be found was presented
on each required element of the offense as follows:  

            (1)        Bozeman—a person

(2)        appropriated the described jewelry by
acquiring or exercising control of it (forbidden conduct) 

(3)        Without Hobson’s effective consent—a
circumstance surrounding the conduct and making the appropriation unlawful

(4)        With intent to deprive—to withhold the
jewelry so that the value was lost to the owner (required culpability). 

 

            The State is required to prove
beyond a reasonable doubt that the appropriation of the property was unlawful,
which may be accomplished by evidence in one of three ways:  (1) without the effective consent of the
owner; (2) property is stolen and the actor appropriates it knowing it was
stolen; or (3) property was in the custody of law enforcement . . . .  Tex.
Penal Code Ann. § 31.03(b)(1)–(3). 
These are the alternative methods of proving the appropriation is
unlawful.  Since the State alleged only
that the unlawful character of the appropriation was that it was accomplished
“without the owner’s effective consent,” that is the alternative means the
State must prove.  

            The
evidence showed that Hobson did not consent to Bozeman taking the
property.  “Consent” means assent in
fact, whether real or apparent.  Tex. Penal Code Ann. §
1.07(a)(11).  If the evidence shows the
owner did not give any form of consent, that necessarily is evidence that the
owner did not give “effective consent.” 
“Appropriation of property” is “without the owner’s effective consent”
if either (1) it is without his or her “assent in fact” or (2) his or her
“assent in fact” is rendered ineffective by one or more of the circumstances
listed at Texas Penal Code  Section 31.01(4),
including “deception.”  Thomas v. State, 753 S.W.2d 688, 692
(Tex. Crim. App. 1988).[9]
 

            Section
31.01(3) sets out several instances of events (including the actor’s deception)
that demonstrate consent is not effective. 
So if a victim gave some form of consent, the defendant’s deception may
be used to show that the consent given was not effective.  The statutory alternative element the State
must prove is that the appropriation was without effective consent.  Acting with deception is not an alternative
manner of committing theft, but is one way in which to prove that the consent
given was not effective.  See Milton
v. State, 652 S.W.2d 958, 959 (Tex. Crim. App. 1983) (“The method or means
by which a defendant unlawfully appropriates property is not an element of the
offense of theft under § 31.03, supra, and it need not be included in the
paragraph applying the law to the facts.”); Harmon
v. State, 889 S.W.2d 521, 524 (Tex. App.—Houston [14th Dist.] 1994, pet.
ref’d).

            “When
relevant at all in a prosecution for theft, however, ‘deception’ goes to ‘circumstances
surrounding the conduct’ of the accused, in that deception operates to render
otherwise apparent consent ‘ineffective.’ 
Sec. 31.01(4)(A) . . . . But the deception is not of itself ‘forbidden
conduct’ under Sec. 31.03, supra.”  Mills, 722 S.W.2d at 415;[10]
see Skillern v. State, 890 S.W.2d 849, 871 (Tex. App.—Austin 1994, pet.
ref’d).  

            The
evidence was sufficient to prove that the appropriation of the jewelry was
without the owner’s effective consent. 

            C.       Variance 

            The
State alleged that Bozeman took the property without the effective consent of
the owner, namely, by deception. 
The proof at trial was that Bozeman took the property without Hobson’s
assent in fact.  Because we have
concluded that allegation is not a statutory alternative element of the
offense, we next turn to the question of whether that variance between what was
alleged and what was proven requires reversal of the conviction.  See
Cada v. State, No. PD-0754-10, 2011
WL 409002, at *5 (Tex. Crim. App. Feb. 9, 2011) (The Texas “immaterial
variance” law as set out in Gollihar
does not apply to the specific statutory elements of the offense alleged.”)
(citing Smith v. State, 135 S.W.3d
259, 262 (Tex. App.—Texarkana 2004, no pet.). 

            “A
variance between the wording of an indictment and the evidence presented at
trial is fatal only if ‘it is material and prejudices [the defendant’s]
substantial rights.’”  Gollihar, 46 S.W.3d at 257 (quoting United States v. Sprick, 233 F.3d 845, 853 (5th Cir. 2000).  If proof of deception is not a required
element of the offense of theft and is not a statutory alternative manner or
means of committing theft under the hypothetically correct jury charge, the
variance is not necessarily reversible error. 
In such event, we consider whether the variance in the indictment and
the evidence is a material variance.  We
measure the sufficiency of the evidence by the hypothetically correct jury
charge, which need not incorporate allegations that give rise to immaterial
variances.  Gollihar, 46 S.W.3d at 256.

            “The
widely-accepted rule, regardless of whether viewing variance as a sufficiency
of the evidence problem or as a notice related problem, is that a variance that
is not prejudicial to a defendant’s ‘substantial rights’ is immaterial.”  Id.
at 246–47.  In determining if the
defendant’s substantial rights have been prejudiced, we must consider two
questions:  (1) whether the indictment,
as written, informed the defendant of the charge against him or her
sufficiently to allow the defendant to prepare an adequate defense at trial,
and (2) whether prosecution under the deficiently drafted indictment would
subject the defendant to the risk of being prosecuted later for the same crime.  Id.;
see In re S.C., 229 S.W.3d 837, 841
(Tex. App.—Texarkana 2007, pet. denied); Brown
v. State, 159 S.W.3d 703, 709 (Tex. App.—Texarkana 2004, pet. ref’d).

            The
record demonstrates that the indictment gave Bozeman adequate notice to allow
him to prepare his defense.  This case
was not tried on the theory that Bozeman was allowed to take the property with
Hobson’s consent, obtained by his deceptive acts.  Bozeman denied taking the property.  He testified that the jewelry taken to the
pawn shop was not Hobson’s, but that he acquired the jewelry from another pawn
shop, his father, and from Denby.  The
record affirmatively demonstrates that Bozeman did not attempt to argue that he
ever had Hobson’s permission to take it. 
Bozeman does not argue that he was surprised or hampered in preparing a
defense, but merely argues the State presented no evidence of deception.  

            Further,
we find there is no risk that Bozeman could be prosecuted again for
appropriating the same property as that which was specifically described in the
indictment.  Gollihar, 46 S.W.3d at 258. 
We find the variance between the pleading and the evidence presented to
be an immaterial variance and may be disregarded in applying the hypothetically
correct jury charge to the issue of evidence sufficiency.  Id.
at 257. 

            We
acknowledge that our sister court has held that when the indictment
specifically alleged that the consent was induced by deception, the State was
required to prove “that method of theft for conviction.”  Geick
v. State, 321 S.W.3d 706, 710 (Tex. App.—Houston [14th Dist.] 2010, pet. granted, No. PD-1734-10 (Tex. Crim.
App. Mar. 30, 2011), available at http://www.ccc.courts.state.tx.us/opinions/pdfOpinionInfo2.asp2OpinionID=20825.  For reasons previously stated, we
respectfully disagree that “deception” is a “method of theft” that must be
proved in this situation. 

III.       Sufficient Evidence
Supports the Value of the Stolen Jewelry 

            In his second point of error,
Bozeman claims the value of the jewelry in question was not supported by
sufficient evidence.  The indictment
alleges the value of the jewelry to be “$1,500 or more but less than $20,000.”  To prove the stolen property’s value, the
State offered Hobson’s testimony.  The
State alleged in the indictment that Hobson was the owner of the stolen
property.  After testifying about how she
acquired the jewelry, Hobson testified as follows:

            Q.        And based on your experience, these nine
items, or even these -- let’s say seven items, we’ll exclude the gold coin with
three stones, which doesn’t exist, or the 5 ounce Eagle coin.  Let’s -- we’re just looking at the other
items?[11]

 

            A.        Yes, sir.

 

            Q.        Would the value of those item [sic] be
less than 1,500 or more than 1,500?

 

            A.        More.

 

            Q.        Any particular item there that you would
say it wouldn’t even be worth a thousand on [sic] itself?

 

            A.        The sapphire ring with the diamonds.

 

            Q.        How much do you think it’s worth?

 

            A.        Minimum of about a thousand.

 

            The
State also sought to establish the stolen jewelry’s value through the testimony
of Charles Dickens, the owner of Dickens’ Jewelry store in Palestine for the
past thirty years:   

            Q.        . . . . My understanding is that you’ve
been asked in the past to give opinions on the value of pieces of jewelry for
court cases.  Would that be true?

 

            A.        Yes.

 

            Q.        And let me ask you, looking at State’s
Exhibit 17,[12] of
those items that had been in your possession at one time, just a ballpark
figure, all total, would the value of those items be less or more than $1,500?

 

            A.        It would be more.

 

            Q.        And let me just exclude the gold coin from
the list and also the ring with the gold coin attached to it.  Have you looked at those two?

 

            A.        Yes.

 

            Q.        Taking those two out, would your
testimony remain the same that the value would be over $1,500?

 

            A.        Yes.

 

            “[W]hen
the State seeks to establish the value of an item of property through the
testimony of a non-owner[,] the witness must first be qualified as having
personal knowledge of the value of the property.”  Sullivan v. State, 701 S.W.2d 905, 908 (Tex. Crim.
App. 1986).  Yet, “[i]t has long been the
rule in this State that the owner of property is competent to testify as to the
[fair market] value of his own property.”  Id.  Because such testimony is an offer of the
owner’s best knowledge of the value of his or her property, it “constitutes sufficient
evidence for the trier of fact to make a determination as to value based on the
witness’s credibility.”  Jones v.
State, 814 S.W.2d 801, 803
(Tex. App.—Houston [14th Dist.] 1991, no pet.) (citing Sullivan, 701 S.W.2d at 909).  Rebuttal of the owner’s opinion evidence must
be accomplished through the use of cross-examination and the offer of
controverting evidence as to the value of the property.  Id.

            Here,
Hobson was named as the owner in the indictment.  Hobson offered testimony of her best
knowledge of the value of her property. 
Such evidence is legally sufficient, the trier of fact having found
Hobson’s testimony to be credible. 
Further, Dickens was qualified as having personal knowledge of the value
of the property––the property was in Dickens’ possession, and he is well
acquainted with the valuation of jewelry, having been in the jewelry business
for thirty years.  Neither Hobson nor
Dickens was cross-examined on the value of the jewelry, and no controverting
evidence as to its value was offered.  We
find the evidence of the value of the jewelry in question to be legally
sufficient.  Bozeman’s second point of
error is overruled.

IV.       CONCLUSION

 

            We affirm the judgment
of the trial court.

 

 

 

 

                                                                                    Jack
Carter

                                                                                    Justice

 

Date Submitted:          February 11, 2011

Date Decided:             April 8, 2011

 

Publish

 











[1]Tex. Penal Code Ann. § 31.03 (Vernon
Supp. 2010).

 





[2]Originally
appealed to the Twelfth Court of Appeals, this case was transferred to this
Court by the Texas Supreme Court pursuant to its docket equalization
efforts.  See Tex. Gov’t Code Ann.
§ 73.001 (Vernon 2005).  We are unaware
of any conflict between precedent of the Twelfth Court of Appeals and that of
this Court on any relevant issue.  See Tex.
R. App. P. 41.3.

 





[3]Others
helped with the move; Hobson hired Consuelo Venezuela and Christopher Lopez to
help pack.  Bozeman testified that Donald
Davis accompanied him to Hobson’s house to assist with the move.  





[4]Bozeman
claims that he never saw a jewelry box while assisting with the move. 

 





[5]According
to Bozeman, Hobson was aware of his appointment with the manager at Lowe’s on
July 18.  

 





[6]Bozeman
was not charged with the theft of these items. 





[7]Even
though this was not a jury trial, we nevertheless employ this analysis to
determine the legal sufficiency of the evidence.  Malik, 953 S.W.2d at 240 (the Malik test applies to nonjury or
bench trials).





[8]In
Geesa v. State, 820 S.W.2d 154, 159
(Tex. Crim. App. 1991), overruled on
other grounds by Paulson v. State, 28 S.W.3d 570 (Tex.
Crim. App. 2000), the Texas Court of Criminal Appeals expressly disavowed the
“reasonable hypothesis analytical construct” for legal sufficiency
reviews.  





[9]Before
the introduction of the hypothetically correct jury charge doctrine, courts
considered these questions under the surplusage theory.  Generally, the question was whether the
indictment gave proper notice of the offense. 
In this area, Thomas held that
in a common theft case (no assent), it was proper to merely plead lack of
effective consent.  In such an instance,
consent depends entirely on the owner’s state of mind.  But when the State relies on a defendant’s
act or omission to negate consent, the indictment must allege which of the statutory
negatives vitiated consent.  Geter v. State, 779 S.W.2d 403, 407
(Tex. Crim. App. 1989). 





[10]Judge
Clinton, the author of the Mills
opinion, later stated in a concurring opinion that a more precise statement
is:  “[w]hen relevant at all in a
prosecution for theft, however, ‘deception’ goes to ‘nature of conduct’ and
operates to render otherwise apparent consent ‘ineffective’ . . . . But the
deception is not in itself the ultimate ‘forbidden conduct’ under Sec. 31.03,
supra.”  Cheney v. State, 755 S.W.2d 123, 131 (Tex. Crim. App. 1988)
(Clinton, J., concurring).  





[11]Hobson
explained in her testimony that the yellow gold coin ring described in the
indictment as having three stones does not have three stones; rather, it has
three coins.  Hobson further explained
that the gold eagle coin described in the indictment as weighing five ounces
actually weighs a half ounce.  





[12]Exhibit
17 is a photograph of the nine items of jewelry listed in the indictment that
Bozeman delivered to Dickens’ Jewelry store.